COBB, Respondent, v. COBB, Appellant.

(179 N. W. 498.)

(File No. 4727.   Opinion filed October 18, 1920.)

1. **Divorce—Decree Granting, Vacation of at Term, Reopening For Alimony, Jurisdiction Re Motion to Vacate—Whether Remedy by Action.**

    Trial court had jurisdiction to entertain a motion to vacate a decree of divorce at the term at which it was rendered, for the purpose of rehearing the cause and allowing temporary and permanent alimony; and the adverse party's contention that the remedy was by an action in equity on the ground that the term at which the decree was entered had been adjourned prior to proceedings to vacate, is untenable; it being undisputed that the term had not been adjourned.

2. **Divorce—Decree Procured Through Fraud of Losing Party—Husband's False Representations to Wife of Threats of His Life Unless He Divorced Her—Representing Her Brother as Responsible Re Threats—Inducing Her To State She Had Left Him—Would Remarry After Divorce—Wife Under Husband's Will, Court Defrauded, Decree Invalid.**

    Where the evidence showed that ever since the parties were married, to time when husband made false representations to his wife, they had lived happily; that he falsely represented to her that an anonymous letter threatened his safety, later that he had received several letters threatening his life if he continued to live with her; that his talk indicated he believed the letter writer was determined to force them to separate or else kill him; that he claimed to believe her brother responsible for the letters; and that to secure his personal safety they must lead his enemies to believe they had separated; that she believed him and that their living together would put him in imminent peril; that to create belief of her brother that they had separated he induced her to go to a distant state, and to write him enroute that she had left him, which letter he would bring to her brother's attention; that she did so write him; that though writing her he never asked her to return, she writing him daily; that when she returned to a point near home he failed to meet her, later visiting her claiming three shots had been fired at him and that he had received another letter saying he would be killed unless they were divorced by a date stated, and that if she would procure a divorce they would, as soon as danger was past, remarry; that later he brought a lawyer to her who later gave her a complaint which she signed; that husband advised her not to ask for alimony as it was not to be a real divorce except to save his life, etc., that he would

continue to provide for her; that later the action was tried
under stipulation of counsel and decree of divorce rendered;—
held, that trial court rightly found that in starting and prose-
cuting the suit wife was a mere puppet under husband's control,
believing said false representations; that, while no direct testi-
mony showed his representations false, certain hearsay evidence
discrediting them after the decree warranted inference that
they were false.

3. **Same—Fraudulent Scheme for Release From Marital Obligations
—Fraud On Court as Basis of Jurisdiction.**

Held, further, that husband's said representations were part
of a damnable fraudulent scheme through which to get release
from marital obligations; that he may not urge that such in-
strumentality was not fraud on the court that controlled the
acts on which jurisdiction rested; that what he did was tanta-
mount to personally forging the complaint, then engaging an
attorney to present it to court in name of his wife, and to him-
self procuring witnesses in support thereof, thus in effect pray-
ing for and leading court to grant a decree against himself, a
gross fraud, extinsic in nature, upon the court.

4. **Judgments—Divorce Decree—Vacatable Where Tainted With and
Creature of Extrinsic Fraud.**

It is well settled law in this and other states, as conceded
by appellant, that judgments may be vacated where tainted
with, and creatures of, an extrinsic fraud.

5. **Divorce—Vacation of Decree Against Husband Procured by Him,
For Re-trial and Allowance of Alimony—Fraud as Ground—
Jurisdiction Retained for Full Justice.**

Trail court was justified in vacating a decree of divorce pro-
cured through false representations by him to his wife that it
must be procured to guard his personal safety against repeated
threats of his life by purported letter; such representations
being a fraud on the wife and the court; and husband may not
resist vacation of decree on ground that, because wife now
seeks of her own volition to have court retain jurisdiction that
she may present her—not her husband's—complaint, and ask
for divorce and alimony; such case differing from one where both
parties are supposed to have, through common fear brought
about by menaces, in good faith sought a decree, and where
husband after such decree should seek to vacate it and dismiss
suit, and where wife were supposed to seek mere vacation of
decree with leave to amend complaint to procure alimony; that
where court has acquired jurisdiction of parties, it should
retain it to the end that full justice be accorded them.

6. **Divorce—Wife Impelled by Husband's Will, Decree Granting Her**

**Divorce, Vacation Of—Whether Wife Estopped From Seeking Alimony and New Decree.**

Where a wife, acting wholly under control of husband, who has falsely represented to her that he was being threatened by third party with death unless divorce was procured, is thus instrumental in procuring a decree of divorce against him, which decree has been vacated on those grounds, she is not estopped from thereafter seeking alimony and a decree against him for desertion.

7. **Divorce—Wife Impelled by Husband's Will to Procure Decree— Menace if Not Duress Shown As Coercion—Statute.**

Where, in opening a decree of divorce against the husband, on the ground that he had menaced her into prosecuting the suit, court had found that she acted under coercion, held, that while duress as defined by our statute was not proven, there was abundant evidence of menace as defined in part by Subd. 2, Sec. 814, Rev. Code of 1919, as consisting of a threat of unlawful and violent injury to the person or property of one's wife.

Smith and Gates, JJ., not sitting.

Appeal from Circuit Court, Beadle County. HON. ALVA E. TAYLOR, Judge,

Action by Gladys Cobb, against S. B. Cobb, for divorce. From an order vacating a decree in plaintiff's favor and granting her time within which to serve an amended complaint and to take further proceedings, defendant appeals. Affirmed.

*Chamberlain & Hall,* and *Gardner & Churchill,* for Appellant.

*Crawford & Crawford,* for Respondent.

(1) To point one of the opinion, Respondent cited: Purinton v. Purinton (S. D.) 169 N. W. 236; York v. York, 3 N. D. 343.

(4) To point four, Appellant cited: Reeves v. Reeves, 24 S. D. 435; Mahoney v. Ins. Co. (Ia.) 110 N. W. 1041.

Respondent cited: Bueter v. Bueter, 1 S. D. 94; Eadie v. Slimmons, 26 N. Y. 1; Flood v. Templeton, (Cal.) 92 Pac. 78, L3 L. R. A. (N. S.) 584.

(5) To point five, Appellant cited: Nicholson v. Nicholson (Ill.) 15 N. E. 230; Cameron v. Cameron, 30 S. D. 634.

(6) To point six, Appellant cited: Henderson v. Henderson (N. D.) 156 N. W. 245, 60 L. R. A. 307, note.

(7) To point seven, Respondent cited: Pierce v. Brown, 7 Wall. 214; Olmstead v. Olmstead (Minn.) 43 N. W. 67.

Respondent cited: Cowan v. Cowan, 53 N. Y. Supp. 93; McDonald v. McDonald (Mo.), 161 S. W. 850.

WHITING, J.   A decree was rendered by the circuit court granting to plaintiff an absolute divorce . from defendant; but, in conformity with her complaint, wherein she had alleged that there had been an adjustment of property interests and waived any claim to the property of defendant, the decree granted her no alimony.   This decree was entered on August 5, 1918.   Before the final adjournment of term of court at which such decree was rendered and entered the plaintiff procured from the trial court an order to show cause, requiring the defendant to show cause why the decree should not be vacated and said cause reheard and alimony, temporary and permanent, allowed.   Upon the return of said order affidavits were submitted by both parties, and the court made and entered an order vacating the decree and granting plaintiff time within which to serve an amended complaint, and to take such further proceedings . as she might desire, and providing that the cause should thereafter proceed as though no decree had been made.   From such an order this appeal was taken.

Appellant contends that the trial court was without jurisdiction to entertain the motion to vacate the decree—he contending that respondent's remedy was an action in equity.   He bases such contention upon the assertion that the term at which the decree was entered had been adjourned prior to the procedings to vacate decree.   It is unnecessary for us to consider the question whether a decree can be vacated upon motion after the adjournment of the term at which it was rendered, because it appears by respondent's brief, and is undisputed in appellant's reply brief, that such term had not been adjourned when the order to show cause was issued by the court.

The grounds upon which respondent's motion to vacate the decree was based, and which the court found sustained by the evidence, were that such decree had been procured through the fraud of appellant practiced upon the court and fraud, coercion, and duress practiced by appellant upon respondent.   Appellant contends that the evidence received did not sustain the

allegations as to fraud; that, in any case, the alleged fraud did not pertain to and affect the jurisdiction of the court to enter the decree, and therefore was not such a fraud as warranted the vacation of a decree secured by plaintiff herself; that said decree should not have been vacated, because the motion to vacate was, in fact, a motion seeking to have the decree modified for the sole purpose of securing alimony, under the guise of a motion to vacate the decree; and that respondent is estopped by her own acts from claiming that the decree was fraudulently procured.

[2] The evidence warranted the trial court in finding: That these parties married in 1914, and ever since had been and were husband and wife, with their place of residence at Huron, South Dakota; that for some three years after marriage the relation between these parties was pleasant; that the respondent had a sincere affection for and implicit faith in her husband; that in January, 1918, there came to her attention, through his initiative, a purported anonymous letter threatening appellant's safety; that about a year thereafter he represented to her that he had received several threatening letters, the purport of which was to threaten his life if he continued to live with his wife, and told her that "I guess you and I can't live together any longer;" that he talked as though he believed the writer of these letters was determined to force them to separate or else kill him; that he claimed to believe her brother responsible for these letters; that he claimed to believe that, in order to secure his personal safety, it would be necessary for them to lead his enemies to believe that they had separated; that she believed what he said, and that their living together put him in imminent peril; that he induced her first to go out to her sister's, near Huron, and stay with her for a short time; that he thereafter wanted her to help him to create the belief in her brother's mind that they had separated; that, to that end, he had induced her to take a trip to California, where her father then was, and instructed her that, upon reaching Sioux City, she write him a letter stating that she had left him and was going to her folks, which letter he would so place that it would come to the attention of her brother; that she wrote the letter as directed; that she stayed in California until some time in April, 1919; that she wrote to her husband daily

while in California, and heard from him occasionally, but he never asked her to return; that he wrote, asking her to tell her people that she had left him; that she returned to South Dakota in April, 1919, telegraphing him to meet her at Cavour, a point near Huron; that he failed to meet her, and she stopped with her sister two days; that finally, on one day about the middle of July, 1919, he came to her at her sister's and represented to her that on the evening before three shots had been fired at him; that he then also represented to her that he had received another letter saying he would be killed unless they were divorced by August 1st; that he further represented that, if she would procure a divorce, then, as soon as this danger was past, they would be remarried; that she was sick and thought only of saving him from the danger she supposed was hanging over him, and consented because of such influences; that she told him she would do as he wanted, but was too sick to go to town; that on July 17th he brought a lawyer out to see her; that they went back to town and returned the same day; that the lawyer then gave her a complaint, which she signed; that appellant advised her it was unnecessary to have any provision for alimony, because it was not to be a real divorce, except to save his life, and to make a record that would convince his secret enemy that they had complied with his commands; that he told her and her sister that he would continue to provide for her; that thereafter the action was brought on through stipulation of counsel, and decree rendered August 4th and entered August 5th.

The trial court was justified in finding that, in starting and prosecuting the divorce action, respondent was but a mere puppet, acting under the controlling will of appellant, because implicitly believing in the representations that he made, including the representation that he believed his life in peril while they were not divorced. It is true that there was no direct testimony that supports respondent's theory that the representations by appellant as to receipt of threatening letters were false; but there was certain hearsay evidence tending to discredit such representations, and the conduct of appellant, after the entering of the decree was so inconsistent with his previous promises that the trial court did, and this court does, draw the inference therefrom that there was absolutely no truth in such representations.

When these parties were married, appellant was wholly without means, and respondent's father gave him the financial assistance necessary to establish him in business. Through such business, in the conduct of which he was assisted by his wife he has accumulated considerable means, all of which stands in his name.

[3, 4] We are satisfied that appellant's representations to his wife were all a part of a fraudulent and damnable scheme, through which he sought to get released from his marital obligations. It will not lie in his mouth to say that what he did acting through the instrumentality of his wife, an innocent instrument in his hands, was not a fraud upon the court. and a fraud that controlled those acts upon which the jurisdiction of the court rested. It was because of such fraud that the summons and complaint were issued and the court acquired jurisdiction of the cause. If appellant had personally forged the complaint herein, and had then engaged an attorney to present such complaint to the court in the name of his wife, and had himself procured witnesses to go before the court and testify in support of said complaint, and thus in effect prayed for, and led the court to grant, a decree against himself, he would have committed a gross fraud, extrinsic in its nature, upon the court. The foregoing is, in effcet, just what he did do. It is the settled law of this as well as of all the states, and is conceded by appellant, that judgments may be vacated where same are tainted with, and are the creatures of, extrinsic fraud. We deem it unnecessary to cite authorities to support such proposition..

[5] Appellant contends that the trial court should not have vacated the decree, because it is apparent that respondent's sole purpose in seeking such vacation is to procure an allowance for alimony. In other words, appellant contends that, because respondent now seeks of her own volition to have the trial court retain its jurisdiction herein, to the end that she may present her —not her husband's complaint, and ask, not only a decree of divorce, but judgment for alimony, she should be denied relief, regardless of the fraud of which appellant has been guilty. Appellant's line of reasoning is not persuasive. If these parties had both been the victims of outside influence, and through fear, brought about by menaces, had both, acting in good faith the one to the other, sought the decree of divorce, and appellant now

sought to have such decree vacated and the action entirely dismissed, and respondent were seeking the mere vacation of the decree, with leave to amend the complaint for the sole purpose of procuring alimony, appellant might have some standing in court; but to hold that respondent cannot seek financial relief because she now, freed from appellant's overpowering will, desires a divorce. would allow appellant to hold the fruits of his fraud. A court of equity has acquired jurisdiction of these parties, and it should retain such jurisdiction, to the end that full justice may be meted out as between them.

[6] What we have said above disposes of appellant's contention that respondent is estopped by her acts; until the motion to vacate the decree, not her will, but that of appellant, was controlling her acts. No elements for estoppel exist.

[7] Appellant makes much of the fact that respondent alleged, and the court found, that she acted under duress, and that the evidence failed to show duress. It is true that duress, as defined by our statute, was not proven. But there was abundant evidence of menace, as defined by our statute. Subdivision 2, § 814, Rev. Code of 1919. The menace proven was sufficient to establish the "coercion" found by the trial court.

The order appealed from is affirmed.

SMITH and GATES. JJ., not sitting.