STATE v. CITY OF CLEARWATER, *et al.*

184 So. 675.
Division A.
Opinion Filed November 23, 1938.

114

*Chester B. McMullen,* State Attorney, for Appellant;
*John C. Polhill,* and *S. E. Simmons,* for Appellees.

BUFORD, J.—Counsel for the respective parties agree that the history of the case is as follows:

"Acting under the provisions of Chapter No. 17118, Laws of Florida, Acts of 1935, the City of Clearwater has authorized the operation, construction and maintenance of a Sanitary Sewerage System as an extension and improvement to the Sanitary Sewerage System now owned and operated by the City of Clearwater for the purpose of promoting the public health and welfare of its citizens. The present Sanitary Sewerage System of the City comprises in the neighborhood of fifty miles of sewers and has been built over a long period of time, commencing with the year 1914, most of the sewers in the City were constructed during the recent Florida real estate boom, and at that time the materials and methods of construction were very poor and as a consequence, a large majority of the sewers have proven unsatisfactory. There are certain sections of the City without sewers, particularly is this true in the colored section, Belmont Park and on Clearwater Beach, a thickly populated and fast growing section of the City. The population of the City has from year to year continued to increase and the present sewer system of the City is grossly inadequate. These are only a few of the reasons why the City of Clearwater has decided to make extensions and improvements to

its present sanitary sewerage system. In order to carry into effect the expressed intention and desire of the City as aforesaid the City proposes to secure from the United States of America a loan and grant in the sum of $449,090.00.

"On the 5th day of October, 1938, the City of Clearwater filed its petition setting forth that pursuant to the provisions of Chapter No. 17118, Laws of Florida, Acts of 1935, the City Commission of the City of Clearwater duly passed and adopted Ordinance No. 427, being an Ordinance proposing the Construction of a Sanitary Sewerage System, and to Aid in Financing the Cost of said Construction Proposing the Issuance of $272,000.00 Revenue Certificates of the City of Clearwater, Florida, payable solely from the Revenues Derived from said Sanitary Sewerage System, said petition set forth that said Ordinance was passed and published in the manner provided by law, a copy of said Ordinance No. 427 aforesaid being attached to the petition and by reference made a part thereof. The petition averred the passage and adoption on August 26th, 1938, by the City Commission of the City of Clearwater of Ordinance No. 429, being An Ordinance Providing for the Construction of a Sanitary Sewerage System and to Aid in Financing the Cost of said Construction Providing for the Issuance of $272,000.00 Revenue Certificates of the City of Clearwater, Florida, payable solely from the Revenues Derived from said Sanitary Sewerage System. A certified copy of said Ordinance was attached to the petition and by reference made a part thereof, said petition averred the publication of said Ordinance as required by law.

"Said petition also set forth and disclosed the passage by the City Commission of the City of Clearwater on the 26th day of August, 1938, of a Resolution calling and ordering a special election to be held in the City of Clearwater on the 27th day of September, 1938, in connection with the pro-

posed issuance of the Sewer Revenue Certificates, a copy of said Resolution being attached to the petition as Petitioner's Exhibit 'H;' the petition averred that notice of Election was published in The Clearwater Sun, a newspaper of general circulation published in the City of Clearwater, in the issues of August 27th, September 3rd, 10th, 17th and 24th, 1938; the petition further averred that for the purpose of determining the total number of qualified electors residing in said City and who were freeholders and entitled to participate in said election, the City Commission of said City did cause to be made up and certified by the registration officer having charge of the registration books of said City, a list of the names of all qualified electors appearing thereon who were determined to be freeholders residing in said City and who were also determined to be qualified to vote in said election, that said list was duly prepared and certified, copy of the same has been filed and preserved among the records of said City Commission, and a certified copy of said list was likewise furnished to the Clerks and Inspector at the voting place where the election was held; the petition averred that said election was duly held in the City of Clearwater on the 27th day of September, 1938, at which time it had been determined there were 1318 qualified electors residing in said City who were qualified to participate in said election; that the total number of votes cast in said election was as follows:

"For Sewer Revenue Certificates _____ 483

"Against Sewer Revenue Certificates _____ 334

"Mutilated Ballots and not counted _____ 14

"That the City Commission of the City of Clearwater duly canvassed the returns of said election and that said election resulted in favor of the approval of the issuance of said Sewer Revenue Certificates.

"Following the successful freeholders election, called and held by the City of Clearwater for the purposes aforesaid, said petition disclosed and set forth on the 3rd day of October, 1938, said date being more than forty (40) days after the passage of Ordinance No. 427, the City Commission of the City of Clearwater, Florida, pursuant to and in full compliance with subsection (g) of Section 1 of Chapter No. 17118, Laws of Florida, Acts of 1935, duly passed and adopted an Ordinance authorizing the construction of the sewerage system theretofore proposed, reciting the purpose, the territory to be included and authorizing the issuance of Sewer Revenue Certificates in the aggregate principal amount of $272,000.00, payable solely from the revenues and income derived from the operation of said sewerage system, said revenue certificates to be dated October 1st, 1938, in the denomination of $1000.00, numbered 1 to 272, both inclusive, in order of maturity, bearing interest at the rate of 4% per annum, payable semi-annually, and maturing serially in the years and amounts as set forth therein, a certified copy of said ordinance being attached to the petition as an exhibit and by reference made a part thereof. Said petition disclosed the proper publication of said ordinance as required by law.

"Said petition prayed that said sewer revenue certificates therein referred to be validated and confirmed. Upon the filing of the petition by the City of Clearwater to validate and confirm the sewer revenue certificates, an order to show cause was promptly issued, likewise, the Notice to Taxpayers. The notice to Taxpayers was duly published as required by law, and service was had upon the State Attorney.

"Upon order of the Court to show cause why the Sewer Revenue Certificates should not be validated and confirmed, the State Attorney of the Sixth Judicial Circuit of Florida

on October 26th, 1938, filed an answer on behalf of the State of Florida. In view of the fact that the Answer raises the questions which we desire to discuss in this proceeding, we will at this time call this Court's attention to the pertinent parts of the Answer. The questions to be argued in this appeal arise as the result of the following paragraphs as contained in the Answer, and for the convenience of all parties, we have numbered these paragraphs as they appear in the Answer:

" '2. Further answering said petition and particularly paragraphs three and ten hereof, this Respondent would show unto this Court that on the 22nd day of August, 1938, it is alleged that Petitioner passed and adopted Ordinance No. 427, being an Ordinance Proposing the Construction of a Sanitary Sewerage System, and to Aid in Financing the Cost of said Construction, Proposing the Issuance of $272,-000.00 Revenue Certificates of the City of Clearwater, Florida, Payable Solely from the Revenues Derived from said Sanitary Sewerage System; that on the 3rd day of October, 1938, it is alleged and set forth in said petition that the City Commission of the City of Clearwater, Petitioner herein, pursuant to and in full compliance with subsection (g) of Section 1 of Chapter No. 17118, Laws of Florida, Acts of 1935, upon at least a 3/5 vote, the same being a unanimous vote, duly passed and adopted an Ordinance authorizing the construction of the Sewer System theretofore proposed, reciting the purpose, the territory to be included and authorizing the issuance of Sewer Revenue Certificates of said City of Clearwater in the aggregate principal amount of $272,-000.00, payable solely from the revenues and income derived from the operation of said Sewerage System, said Revenue Certificates being payable at the time and place and in the manner as set forth in said petition and bearing interest thereon at the rate set forth therein; that Petitioner's sole

authority for the issuance of the Sewer Revenue Certificates is under and by virtue of Chapter No. 17118, Laws of Florida, Acts of 1935, that in and by virtue of subsection 'd' of Section 5 of the aforesaid Act, it is provided therein—

" 'That upon the adoption of an ordinance or resolution by the City Council authorizing the issuance of mortgage revenue certificates or debentures, notice thereof shall be published once a week for two consecutive weeks in a newspaper of general circulation in the county in which the municipality is located, or by posting a notice in three conspicuous places within the limits of the municipality, one of which shall be posted at the door of the City Hall or City offices;'

"That said petition fails to disclose or set forth that the form of notice provided for in said Act has been published once a week for two consecutive weeks, in any newspaper of general circulation in Pinellas County, Florida, nor does said petition allege that the form of notice has been posted in at least three conspicuous places within the territorial limits of the City of Clearwater; that it affirmatively appears from the averments contained in said petition that said form of notice, nor has any notice of any nature or kind whatsoever, been published or posted in connection with, or in conformity with subsection 'd' of Section 5 of Chapter No. 17118, Laws of Florida, Acts of 1935.

"3. Respondent further states that under and by virtue of the terms of subsection 'e' and 'f' of Section 5 of Chapter No. 17118, Laws of Florida, Acts of 1935, it is provided, *inter alia*:

" ' "a referendum may be held upon the issuance of such mortgage revenue certificates or debentures" by filing "a petition with the clerk within thirty days after the date of the first publication of the notice of the issuance of the

proposed revenue certificates or after the posting of said notice;"

" 'That said referendum shall be held pursuant to, in conformity with and in the time and manner as set forth in subsections "e" and "f" of Section 5 of Chapter No. 17118, Laws of Florida, Acts of 1935.

" 'This Respondent avers that in view of petitioner's failure to publish or post said notice as set forth in paragraph two of this Answer, said thirty days period of time allowed for the filing of a petition for referendum on the question of the issuance by the City of Clearwater, of Sewer Revenue Certificates in the aggregate principal amount of $272,000.00, has not expired, nor will the same expire during the pending of this proceeding. That for this Court to authorize the issuance of said Sewer Revenue Certificates would deprive the registered and qualified electors residing in said City of Clearwater of the right to have a referendum thereon. This Respondent, therefore, further avers that said thirty days period of time not having expired for the filing of a petition for referendum, the issuance by Petitioner of said Sewer Revenue Certificates would be contrary to and in violation of subsections 'e' and 'f' of Section 5 of Chapter No. 17118, Laws of Florida, Acts of 1935.

" '4. Further answering said petition, and particularly paragraphs Six, Seven, Eight and Nine thereof, this Respondent avers that Petitioner was not authorized and empowered on the 26th day of August, 1938, to pass and adopt the purported resolution, wherein a special election was called and ordered to be held on September 27th, 1938, as appears from copy of resolution attached to said petition and made a part thereof as Petitioner's Exhibit "H"; that Petitioner is required under and by virtue of the terms and provisions of Chapter No. 17118, Laws of Florida, Acts of 1935, that forty (40) days time should elapse between the

passage by Petitioner of said Ordinances, being Ordinances Nos. 427 and 436, attached to said petition as Petitioner's Exhibit "A" and Petitioner's Exhibit "H," and by reference thereto made a part thereof; that during the period of time intervening between the passage of said Ordinances referred to herein Petitioner was not authorized or empowered to have, take, entertain or adopt any proceedings of any nature or kind whatsoever, wherein and whereby a special municipal election could be called and held within the territorial limits of Petitioner prior to the expiration of said forty (40) days period of time; that said special election could not be called and held by Petitioner until after the adoption by Petitioner of the authorizing Ordinance, being Ordinance No. 436; that said authorizing ordinance could not have lawfully been adopted by Petitioner until the elapse of forty (40) days time from the adoption of the proposing ordinance adopted by Petitioner hereinbefore referred to and attached to said petition as Petitioner's Exhibit "A"; that the holding of said special election by Petitioner on the 26th day of September, 1938, was in this Respondent's opinion null, void, insufficient and of no force and effect whatsoever, and therefore, this Respondent avers that the action of Petitioner in holding said election 'prior to the adoption of ordinance No. 436 was contrary to and in violation of Chapter No. 17118, Laws of Florida, Acts of 1935.'

"Also on October 26th, 1938, certain taxpayers of the City of Clearwater intervened and filed an Answer in said cause as to why said sewer revenue certificates should not be validated and confirmed, and in view of the fact that said taxpayers have not joined in this appeal with the State of Florida, we refrain from commenting on said Answer.

"At the trial had upon the issues thus raised the Chancellor on October 29th, 1938, validated and confirmed the

issuance of the Sewer Revenue Certificates in the manner and form proposed."

The first contention of the appellant is presented by the following question:

1. "In a suit to validate revenue certificates proposed to be issued by a municipality under authority of Chapter No. 17118, Laws of Florida, Acts of 1935, and to be sold *en masse* to the United States of America, is it necessary to publish the notice referred to in Section 5 (d) of said Act?"

It is not necessary for us to here determine whether or not the publication of the notice referred to was jurisdictional because the record shows that a sufficient notice as required by the statute was published for the required period, prior to the date of the entry of the final decree of validation and that statute does not require that that notice be published before petition for validation shall be filed in the Circuit Court.

This also answers the Second Question, which is: "If the foregoing question be answered in the affirmative, is the publication thereof a condition precedent to the institution of suit to validate such certificates?" And this holding is not in conflict with the case of Merrell v. City of St. Petersburg, 91 Fla. 858, 109 Sou. 315. In that case we held that, "Before a municipal corporation is authorized to issue its bonds it must be shown affirmatively that all of those things which the legislature shall have required to be done as a prerequisite to such authority have been done in the manner prescribed by the legislature, if a particular manner has been prescribed by the legislature." See also Davis v. City of Melbourne *et al.*, 126 Fla. 282, 170 Sou. 836.

The third contention is presented by the Third Question which is as follows:

"If a municipality proposes by ordinance conforming to Section (e) Chapter 17118, Laws of Florida, Acts of 1935,

to erect a new utility and issue revenue certificates to pay therefor, is it necessary to observe the provisions of Section 5 (e) and 5 (f) of said Act, where the municipality of its own initiative calls and holds a special election for the purpose of allowing the freeholders of the City to accept or reject the ordinance?"

Section 5, paragraphs (e) and (f) are as follows:

"(e)   A referendum may be held upon the issuance of such mortgage revenue certificates or debentures in the following manner: a petition shall be filed with the Clerk within thirty (30) days after the date of the first publication of the notice of the issuance of the proposed mortgage revenue certificates or debentures or after the posting of the notice, as hereinbefore provided.   The petition shall contain the nature of the objection to the proposed utility or the issuance of said mortgage revenue certificates or debentures and shall be signed by twenty per cent (20%) of the registered and qualified electors of said municipality.   Such referendum shall be held not later than sixty (60) days after the date of the first publication of said notice as aforesaid or the posting of such notice.

"(f)   The aforesaid petition shall be filed with the City Clerk, or the officer performing the corresponding duties, and the said clerk or officer shall ascertain immediately if the requisite number of registered and qualified electors have signed the said petition; whereupon he shall immediately report in writing to the mayor, or the executive officer of said municipality, and to the city council or other legislative body of the municipality, by whatever name known; whereupon a resolution or ordinance shall forthwith be enacted determining if the requisite number of registered and qualified electors have signed the petition, a resolution or ordinance shall forthwith be enacted setting forth the date upon which the referendum shall be held, appropriating sufficient

funds to pay the expenses of said election, designating the places of voting and providing for the form of ballot to be used; provided, however, that in determining the number of registered and qualified electors for the purposes of determining the sufficiency of the petition for referendum, the city clerk, or such other officer, shall use the number of registered and qualified electors at the last municipal election held by the said municipality; provided, further that all rules, regulations, ordinances or resolutions pertaining to municipal elections shall apply under the referendum herein set forth, except where the same are inconsistent with the proceedings herein authorized."

These provisions set forth conditions under which a referendum election may become mandatory but they cannot be construed to deprive the municipal authority of the right, or relieve it of the duty under Section 6 of Article IX of our Constitution to call a referendum election where one is required to be participated in by the qualified freeholders to determine whether or not the issuance of such certificates of indebtedness will be approved by such electors. The provisions quoted merely limit the time in which electors may act and require an election if none has been voluntarily called by the issuing authority. See Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 Sou. 356, and Williams v. Town of Dunnellon, 125 Fla. 114, 169 Sou. 631.

The record shows that the referendum was duly called, advertised and held, resulting in a majority vote of a majority of the qualified freeholders in favor of the issuance of the certificates. Thus the requirements of Sec. 6 of Article IX of the Constitution *and* of the City Charter Act, Chapter 9710, Acts of 1923, were met.

It is contended that all registered and qualified electors of the municipality were entitled to vote in this election and that by limiting the election to qualified freeholders the

municipal authorities exceeded that power and vitiated the election. This contention is untenable. Although the statute, paragraphs (e) and (f) Sec. 5, *supra,* referred to "the registered and qualified electors of said municipality as a gauge for determining whether or not the petitions referred to in those paragraphs contained sufficient names to compel the calling of an election, there is no attempt to extend the limitation of qualified electors beyond that which is fixed by the Constitution and the city charter, *supra.*

The Fourth, and last, question presented is: "Where a municipality adopts an ordinance in conformity with Section 1 (e), Chapter No. 17118, Laws of Florida, Acts of 1935, proposing certain sewer installations and improvements, and after the lapse of forty days therefrom, adopts an ordinance conforming to Section 1 (g) of said Act, is there anything in the entire Act which prevents in the interim the holding of a special election in the municipality for the purpose of allowing the freeholders thereof to approve or reject the proposed construction and issuance of revenue certificates to pay therefor?"

The record shows that by the ordinance adopted on August 22, 1938, the construction of the utility here involved was proposed. The proposition to construct such utility and to issue sewer revenue certificates therefor was submitted to a referendum election of the freeholders by resolution dated August 26, 1938. By the resolution the election was called and held on September 27, 1938, after published notice. And, thereafter, the municipal authorities passed an ordinance authorizing the construction of the utility. Such ordinance was passed more than 40 days after the passage of the initial ordinance or resolution.

It appears from the record that all requirements for the issuance of the certificates herein involved were complied with and, the entire record having been inspected, we find

126

no reversible error and, therefore, the decree appealed from is affirmed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.