# RUSH v. RUSH

(No. 2231; January 26, 1943; 133 Pac. (2d) 366)

For the appellant, the cause was submitted on the brief of *Ingle* and *Ingle* of Thermopolis.

408

The cause was submitted for respondent on the brief of *C. W. Axtell* of Thermopolis.

RINER, Justice.

This case is a direct appeal from a judgment of the District Court of Hot Springs County, sustaining a general demurrer to a third amended petition and dismissing the action when the plaintiff, Lila Rush, declined to further plead. For convenience we shall hereinafter refer to the parties in the cause as aligned in the court below or by their respective names.

The situation disclosed by plaintiff's pleading is rather unusual, and we believe a better idea of what should be decided here can best be set forth by summarizing certain portions of that pleading and quoting other portions verbatim.

In Paragraph 1 of said third amended petition set forth on approximately the first two and one-half pages therein, it is alleged in substance that the plaintiff is and has been for more than one year last past a resident of Hot Springs County and State of Wyoming; that on or about the year 1907 she was lawfully mar-

ried to the defendant, Aaron Rush; that this marriage relation continued until about July 1, 1939, plaintiff living with defendant as his wife until that time, when she was obliged to separate from him on account of certain acts of alleged cruelty toward her on his part, which are particularly described; that three children were born of this marriage, all of whom are now over the age of twenty-one years.

Paragraph 2 of said pleading alleges that during their married life she was at all times a good and faithful wife to defendant; that at the time the parties were married they had no property except personal effects, valued at about $200.00; that approximately June 1, 1939, due to the defendant's conduct toward her, mentioned above, she was obliged to separate from and leave said defendant; that in a certain action brought by her in the Natrona County, Wyoming, District Court, plaintiff obtained a divorce from defendant on account of the alleged misdoing of said defendant mentioned above.

Paragraph 3 of plaintiff's pleading states that due to the defendant's alleged mistreatment of her, she had been obliged to receive medical care in the Casper, Wyoming, hospital, in Natrona County, without means to pay hospital and doctors' fees; that she was without money with which to employ counsel to secure said divorce or on which to live. The remaining portion of said paragraph 3 reads verbatim:

"That defendant willfully and wrongfully and with the intent to cheat and defraud petitioner caused the plaintiff to file said divorce proceedings and willfully, wrongfully and falsely promised plaintiff that he would make with plaintiff a reasonable and proper property settlement, provide for the support of plaintiff, and transfer to plaintiff about one-half of the property owned by said parties, and would pay the hospital and medical fees and advance money with which to get said divorce, if plaintiff would proceed and secure the same.

That he would never live with her again and would not support her, and that she would be unable to recover any property rights in litigation and would have no means of support, unless she did so. That because of plaintiff's sick and weakened condition and financial distress and relying on the representations of said defendant, plaintiff procured said divorce without having any property division made in the divorce proceedings, and the defendant filed a waiver in said cause so said divorce could be granted."

Paragraph 4 summarized is to the effect that she was ignorant of the steps necessary to be taken to secure a property settlement between the parties, relying entirely on defendant's representations; that a copy of the divorce decree is attached to and made a part of her pleading by reference. This decree thus attached adjudges only that "plaintiff be, and she is hereby, awarded an absolute divorce from the defendant." Said paragraph also states verbatim:

"That the plaintiff on account of her said illness did not discover the falsity of the representations made by the defendant until after the close of the term at which the judgment was rendered and after the time allowed by law in which to move the said court for new trial or to vacate said judgment. That at all times since the granting of said divorce the said defendant has refused to deliver unto her any part or portion of the real or personal property belonging to the said parties at the time of said divorce, or make provision for her support. And plaintiff has been deprived of her share of the property and this has been accomplished through the said willful and false representations made by defendant."

It is further therein alleged that plaintiff was unskilled in business, and was in bad health and under physicians' care for several months prior to granting the divorce.

Paragraph 5 reads verbatim:

"That before the starting of said divorce proceedings defendant stated to plaintiff that he would not live with

her any longer, that a separation was indispensable and that unless she would bring suit for divorce he would bring such a suit against her, and would produce evidence that would damage her good name and character which if made public would involve her in disgrace and would entail upon her children shame and disgrace, and threatened that unless plaintiff would follow his directions he would find other evidence, if it were necessary, sufficient to accomplish his design, to obtain a divorce. At the time these threats were made, plaintiff was distressed by her illness and anxiety for the welfare of her children and her own future. She was unaccustomed to and unfamiliar with the administration of courts and she believed defendant would be able to carry out and accomplish his threats. That at the time defendant suggested to plaintiff that she bring an action for divorce, he offered to give her an automobile, of the value of about $600; nine cattle with a value of $600; other personal property and household goods with the value of $400; to pay the expenses of the divorce and sufficient money to purchase for her a home, a cost of which would be about $1000, and would arrange for her support. The plaintiff compelled by her desire to protect her reputation and to shield herself and children and fearing that if she should decline the proposition made by defendant, he would carry out his threat to obtain a divorce from her upon false evidence and induced by the deceit practiced by defendant, accepted the proposition made by the defendant. That the defendant employed counsel to represent plaintiff and paid the fee to such counsel but that the said counsel did not advise the plaintiff of her rights on the subject of property division and gave her no advice whatever or made any contracts whatever relative to her property rights and had no provisions made in the decree, and the said services were rendered in the interests of the defendant and not in the interest of plaintiff. That no evidence was introduced in the trial of the case on the subject of property rights of the parties, but it was represented by plaintiff's attorney to the Court, that the property rights had been settled by agreement. That the defendant has not advanced any sums of money or delivered any property whatever

to plaintiff since the granting of said divorce and refuses so to do and refuses to make any settlement whatever and stated that if plaintiff did not secure said divorce he would give no financial aid to her whatever, but that he would employ an attorney to represent her and make provision for her support and care, relieving her embarrassed financial condition if she would apply for the divorce."

Paragraph 6 sets forth that the parties were at all times residents of Hot Springs County, Wyoming.

Paragraph 7 describes the property possessed and owned by the parties jointly, the real estate being valued at about $7500.00 and personal property likewise of the same value. This paragraph concludes:

"That defendant is engaged in the business of farming and livestock, from which he derives a yearly income of about $2000.00 per year. That he is a strong, healthy man and is abundantly able to continue making said income. That said real property is of record in defendant's name."

Paragraph 8 alleges that none of the property rights of the parties were settled in the divorce proceeding.

Paragraph 9 alleges verbatim:

"That during all the years that plaintiff and defendant lived together, plaintiff, besides doing her household duties and the duties required of a wife to raise said children, also worked in the fields and doing the chores in and about said farm and performed as much labor as the defendant, and was instrumental in acquiring the said property with the said defendant and is entitled by reason thereof to one-half of all said property."

In the tenth subdivision of plaintiff's pleading, it is charged that defendant is about to sell said property in order to prevent plaintiff from securing a fair division of same, and that he will do this unless restrained by injunction.

Paragraph 11 states that she is without means or

property for her support, as the defendant possesses and controls all of the above mentioned property of the parties.

The prayer of the pleading is:

"That the Court decree and make a proper and suitable division of the said property of the said parties and that plaintiff be given and awarded a decree to be the owner of an undivided one-half interest in said real property. That defendant, his servants and agents, be enjoined and restrained from encumbering, deeding, selling, or disposing of any of the said real or personal property of the said parties and that the Court award plaintiff such sums of money, to be paid to her by defendant, as shall appear just and equitable."

Objections were interposed by the defendant to the filing of this pleading, but were overruled and permission given to file same by the Honorable Harry P. Ilsley, Judge of the Sixth Judicial District of Wyoming, who had been called in to sit in the cause of consequence of plaintiff filing therein an affidavit of prejudice against the Honorable P. W. Metz, Judge of the Fifth Judicial District and presiding Judge in Hot Springs County. The order allowing such filing was made April 15, 1941. On that date defendant filed his general demurrer to said pleading, with the result hereinabove indicated. August 7, 1941, the demurrer aforesaid was sustained by Judge Ilsley and the action dismissed by a final order to that effect. The review of this order is now sought by the plaintiff.

It is apparent from plaintiff's pleading as described above that both the parties herein invoked the jurisdiction of the Natrona County District Court when plaintiff was in Casper, Wyoming, for medical treatment in the hospital located there. Under the facts pleaded it would seem evident that that court was under the peculiar circumstances of the case the most convenient for her. That court possesses full jurisdiction to hear

and determine divorce cases, and these parties evidently waived any question in regard to jurisdiction over their persons which might be suggested due to their being residents of Hot Springs County, adjoining Natrona County. The defendant, as the pleading aforesaid avers, did not question the right of that court to hear and determine the cause, but "filed a waiver in said cause so said divorce could be granted". Neither party, so far as can be gleaned from the allegations of plaintiff's pleading, appears to desire the divorce decree disturbed so far as it released them from the reciprocal obligations of husband and wife.

The fault found with the decree is that through the fraud of the defendant no permanent alimony or disposition of the property rights of the parties was adjudicated by that court, notwithstanding the provisions of Section 35-118 W. R. S. 1931. That Section reads as follows:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary, to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

However, this action of the Natrona County District Court cannot be regarded as an oversight on its part, but was to be expected in view of the statement of plaintiff's counsel to the court, pleaded, as we have seen, when the cause was heard, that these property

rights "had been settled by agreement". As a matter of fact they really had not been settled, and the court was not correctly advised of the true situation existing between the parties.

The divorce action appears to have been controlled throughout by the defendant with the aid of the attorney selected and employed by him. That of itself was a fraud upon the rights of the wife, as it may readily be inferred that she received no unbiased and independent legal advice as to her rights concerning the property of the parties, everything being managed in the interests of the husband. The plaintiff was not a woman acquainted with business matters, but quite inexperienced therein.

When these allegations of the third amended petition are considered with the remaining portions of the pleading, where the defendant's conduct is described and averred, we are convinced that the property rights of the wife were simply not taken up for consideration by the court due to the indefensible actions of the defendant. That they should be inquired into by a hearing on the merits, if that can legally and properly be done, is, we think, quite clear.

In 17 American Jurisprudence 483, Section 628, it is said:

"The rule that an allowance of permanent alimony cannot be made after a divorce has been granted by a court having jurisdiction of the person or the property of the husband does not apply where the provision for alimony was omitted from the original decree by fraud."

Similarly 19 C. J. 248, Section 573, asserts the rule to be:

"If, in a suit by a wife for divorce and alimony, plaintiff is granted a divorce, but through the fraud of defendant the judgment makes no provision for alimony, the judgment may be impeached for fraud as in

other cases, or a new trial of the alimony claim granted, and proper alimony awarded without disturbing the decree for divorce."

In Griswold v. Griswold, 111 Ill. App. 269, it was held that:

"Where the consent of the wife, to an amount to be decreed to her as alimony, is coercively obtained by the husband, and through his falsehoods and fraudulent misrepresentation and concealment as to his financial worth and his ability to provide for her, and a decree on consent, so obtained, is entered, there is fraud in the procuring of the decree, and a court of equity has inherent jurisdiction to purge the decree of such fraud and enter a decree awarding to the wife such alimony, as 'from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just.' "

In that case the court said in the course of its review of the evidence submitted in the trial court:

"The evidence shows that for at least one year prior to the decree for divorce, the parties had lived unhappily as a result of the misconduct of appellant; that during that time he had frequently suggested to. appellee the propriety of her applying for a divorce, and that she was adverse to doing so; that they frequently discussed the advisability of living separate and apart, and in that connection, of the provision to be made by appellant for the support of appellee and their child; that appellee at one time offered to take $1,000, and that appellant told her it would be impossible for him to raise that amount; that at another time appellee signified her willingness to be satisfied if appellant would allow her to live in a little house in Springfield and give her $20.00 a month, but appellant refused and insisted that she should leave the city and live elsewhere; that during all this time appellant told appellee that he was insolvent, that his indebtedness exceeded his ability to pay, that he was practically on the verge of bankruptcy and was only keeping up appearances; that appellant having finally obtained appellee's consent to apply for a divorce and to the allowance of the alimony fixed by the decree, employed his own solicitor to file a bill in her behalf, charging him with adultery;

that appellee told such solicitor that the proceeding was contrary to her will, and that she did not want a divorce and appealed to him to advise her whether she was obliged to take the small amount offered by appellant, and that he, the solicitor, told her that if it was brought before the judge, she might not get more than half that amount, and advised her to take it; that upon the filing of the bill for divorce, appellant waived service of process, entered his appearance and consented to an immediate trial of the cause, himself securing the witnesses necessary to prove the allegations of appellee's bill as to his adultery."

In Ex parte Smith, 74 Kan. 452, 87 P. 189, it was decided that if in an action for divorce and alimony the plaintiff was granted a divorce, but through the fraud of the defendant the judgment made no provision for alimony, the judgment could be impeached for fraud as in other cases, and proper alimony could be awarded without disturbing the decree for divorce. In the course of its opinion on habeas corpus application of the husband where he was cited for contempt due to his disobedience of the ultimate judgment passed, we find the court uses this language:

"Ida K. Smith as plaintiff procured a judgment of divorce against her husband, the present petitioner, which contained a recital that all questions relating to alimony, suit money, attorney's fees, costs and expenses of suit, and advancements of money had been amicably settled between the parties. Therefore no judgment other than as described was rendered concerning the subjects of the settlement. Afterward the plaintiff instituted proceedings for a modification of the judgment respecting matters involved in the settlement, alleging that plaintiff's assent to the arrangement had been procured by false and fraudulent representations of the petitioner and his attorney. The court found against certain of the charges of fraud, but sustained others, and modified the judgment by awarding the plaintiff alimony, fixing the time and manner in which it should be paid and taxing the petitioner with the costs of the divorce suit."

The case of Asher v. Asher, 249 Ky. 215, 60 S. W. (2d) 592, was one where it was held that equity would not permit a judgment granting the wife a divorce to defeat a subsequent action for alimony by the wife, who could not secure relief by appeal from the judgment which had been procured through the fraud of the husband. The court, referring to the evidence produced in the case, remarked:

"Here it is shown that the wife did not institute or prosecute the action for divorce in which the former judgment was rendered, but that the petition was prepared or caused to be prepared by the husband, and all subsequent steps up to and including the preparation and entry of the judgment were taken at his instance and without knowledge upon the part of the wife. However, it does appear that the wife signed the petition, but she claims she did this under threats and duress of her husband and this occurred almost two years before the judgment was entered. It further appears that while she had some knowledge that the action was instituted and was pending, she had been assured by appellee and by the court that no judgment would be entered without her consent."

A comparatively recent case, that of Miller v. Miller, 134 Fla. 725, 184 So. 672, decided that where a married woman had assisted in the acquisition or conservation of property of a husband, in addition to her usual marital duties and obligations, and when the wife is not shown to be unworthy, an application to file a petition in the nature of a bill of review of a divorce decree in order to obtain alimony should be granted. In that case the petition for review alleged in substance that the husband by duress obliged the wife to accept $6000 in full settlement of her alimony and support and other rights in property of her husband worth $75,000, with an annual net income of $7,000 or $8,000. It appeared that the wife was forty-seven years of age, in poor health and without means of support except what remained of the money received from the husband.

In Cobb v. Cobb, 43 S. D. 388, 179 N. W. 498, it was shown that a husband represented to his wife that if they did not separate he would be killed and that threats had been made against his life, these representations being untrue. Thereby his wife was induced to apply for a divorce, wherein no alimony was allowed. It also appeared that defendant's representations to his wife were all a part of a fraudulent scheme to be released from his marital obligations. It was held upon the application by the wife to vacate the decree so as to include an allowance of permanent alimony, the husband could not say that a fraud was not perpetrated upon the court whereby it obtained jurisdiction. In the course of the opinion of the appellate court this language was used, referring to the husband's conduct:

"It will not lie in his mouth to say that what he did acting through the instrumentality of his wife, an innocent instrument in his hands, was not a fraud upon the court, and a fraud that controlled those acts upon which the jurisdiction of the court rested. It was because of such fraud that the summons and complaint were issued and the court acquired jurisdiction of the cause. If appellant had personally forged the complaint herein, and had then engaged an attorney to present such complaint to the court in the name of his wife, and had himself procured witnesses to go before the court and testify in support of said complaint, and thus in effect prayed for, and led the court to grant, a decree against himself, he would have committed a gross fraud, extrinsic in its nature, upon the court. The foregoing is, in effect, just what he did do. It is the settled law of this as well as of all the states, and is conceded by appellant, that judgments may be vacated where same are tainted with, and are the creatures of, extrinsic fraud. We deem it unnecessary to cite authorities to support such proposition."

See also Jewell v. Jewell, 71 Colo. 470, 207 P. 991.

We are inclined from a study of these cases and others which we have examined to think that the views

we have announced above concerning the right of the wife to relief if her proofs accord with the allegations of the pleading as above set forth are sound.

It is submitted for the plaintiff that the allegations of the third amended petition charge that:

"The plaintiff on account of her said illness did not discover the falsity of the representations made by the defendant until after the close of the term at which the judgment was rendered and after the time allowed by law in which to move the said court for new trial or to vacate said judgment."

It is evident that this conclusion is not warranted as appears from the record before us. The divorce decree was passed in Natrona County July 19, 1939.

Section 89-2301 declares that:

"A district court may vacate or modify its own judgment or order, after the term at which the same was made:
* * * *
"4. For fraud practiced by the successful party in obtaining a judgment or order. * * * *"

Section 89-2310 declares in part:

"Proceedings to vacate or modify a judgment or order for the causes mentioned in sub-divisions four, five, and seven of § 89-2301, must be commenced within two years after the judgment was rendered, or order made, * * * *."

If these sections should be deemed applicable here because of the defendant being really the "successful party" in the divorce action, on account of the fraud alleged to have been perpetrated by him and that he obtained the relief he desired through inducing the plaintiff to act as a mere puppet in said divorce action to accomplish his design, viz., to be released from his marital obligations regarding plaintiff, without giving her a substantial share in the property of the parties,

then at the time the present action was commenced, March 4, 1940, under the provisions of the law quoted above, as to relief after judgment, the remedy provided by said Sections was still available to plaintiff. The time for commencing proceedings of this character had not expired.

Apparently the time to attack the judgment in the divorce action brought by the plaintiff in the Natrona County District Court has not even at the time this opinion is being placed on file expired when we regard what was said in the authorities review above and by this court in Harden v. Card, 17 Wyo. 210, 218, 97 P. 1075. In the case last cited this court said:

"But plaintiff invokes the power of a court of equity to enjoin proceedings on the judgment on the ground that it was obtained by fraud and perjury and that it would be unconscionable to enforce it. The defendant contends that the remedy provided by the statute is exclusive. But with that contention we cannot agree. Our statute appears to have been taken from the Ohio statute; and in Darst v. Phillips, 41 O. St. 514, the court said: 'In our opinion this statutory remedy is merely cumulative. It is not disputed that courts of equity, prior to the statute, had jurisdiction to impeach judgments for fraud, and enjoin proceedings thereon. It is a fundamental principle that when such courts have once been legitimately vested with jurisdiction they retain it, notwithstanding courts of law subsequently acquire jurisdiction by statute or otherwise, unless the legislature abolish or restrict it.' We concur in the views expressed by the Ohio court, and think the statute was intended to authorize the district court to vacate its judgment and grant a new trial after the term for the causes stated; but not to abolish or restrict courts of equity in the exercise of the power to vacate judgments at law which have been obtained by fraud or perjury, against which the unsuccessful party had no opportunity to defend."

So far as the instant action is concerned, we think it should have been brought in the County where the

decree of divorce was obtained, viz., in Natrona County, Wyoming. The defendant asserts this to be so in his brief in this court. We also are inclined to this view for several reasons. The fraud charged by the pleading aforesaid under review was imposed not only upon the plaintiff in the case, but upon the District Court of the County last mentioned. That court is the one which should determine what really occurred when the divorce decree was passed, as it undoubtedly is more thoroughly conversant with the matter than any other court could or would be. Again, the rule is stated, as we have seen, from the authorities reviewed above, that when fraud is charged in connection with the failure to award a wife a property settlement or permanent alimony, the matter may be investigated "as in other cases" where equitable relief is sought concerning a judgment rendered.

Section 756, Page 484 of 34 C. J. declares, on the authority of many cases, that:

"A bill in equity for relief against a judgment should as a general rule be brought in the county or other judicial district in which the judgment was rendered, * * * * * *."

See also 3 Freeman on Judgments, (5th Ed.) Page 2449, § 1181, 1 Freeman on Judgment, (5th Ed.) Page 405, § 210, and as to fraud generally in vacating judgments Pages 458-463, §§ 232, 233.

3 Pomeroy's Equity Jurisprudence, 5th Ed., Pages 603 and 604, Section 919a, reads:

"When a judgment or decree of any court, whether inferior or superior, has been obtained by fraud, the fraud is regarded as perpetrated upon the court as well as upon the injured party. The judgment is a mere nullity, and it may be attacked and defeated on account of the fraud, in any collateral proceeding brought upon it or to enforce it, at least in the same court in which it was rendered."

Additionally, we regard it as significant of the legislative intention on this matter that Section 35-118, W. R. S. 1931, supra, contemplates that the court granting the divorce shall be the one to "make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce * * * *."

It results from what we have said that the judgment of the District Court of Hot Springs County should be affirmed and plaintiff remitted to her remedy under equitable principles governing matters of this character in the District Court of Natrona County.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.