SHANNON, Judge.
This is an appeal from an order dismissing the complaint in an action to enforce a property settlement agreement between the parties, divorced husband and wife, and for other relief. There are three points of law propounded to us by the appellant-plaintiff. However, it will be sufficient if we give the substance of one question, and that is whether or not plaintiff has alleged in her complaint sufficient facts to state a cause for relief.
In his order dismissing the complaint the chancellor states in part:
“ * * * the Court * * * finds that the Complaint and the exhibits attached thereto, shows on the face of it that the plaintiff comes into court with unclean hands in that the Complaint shows that she is guilty of fraud and collusion practiced upon the Court in the original divorce suit between the plaintiff and defendant, which proceedings were attached to and made a part of the Complaint, The doctrine of clean hands, the doctrine that equity will deny its aid to an illegal transaction, and the decisions of the Supreme Court of this State, holding that a party guilty of fraud in obtaining a divorce decree is not entitled to subsequently come into court and complain that the other party to the divorce action has perpetrated a fraud from which the party seeks relief of a court of equity, compels the Court to find the Complaint fails to state a cause of action.
“The Complaint further shows on its face and by the exhibits attached thereto that the plaintiff testified in open court, under oath, that she did not want any of the property of the defendant, and said testimony completely negatives any allegation of fraud, coercion or duress.”
In her complaint the plaintiff alleges generally that the parties had married on March 28, 1933, and the relationship had continued until the 14th day of September, 1952, when she was forced to live separately and apart from him; that at the time of their marriage, which had lasted for more than 19 years, the defendant operated a small dairy farm, was heavily in debt and his property, including the dairy cattle, was heavily mortgaged; that from the outset she maintained a home for the defendant and took care of his three children by a prior marriage, and by her constant efforts during the entire time of the marriage, enabled him to pay off his debts and acquire *510 a large amount of cattle and real property; that in addition to keeping house for the defendant, the plaintiff alleges that she worked continuously at the dairy business for some nine years, which consisted of milking the cattle, caring for them, repairing and cleaning the barn, working in the milkhouse, cleaning utensils, milk cans and bottles, feeding the cattle, doing all the washing and mending for the family and for four or five men who lived on the dairy ranch as boarders, cooking all the meals for the men and the family and working in the fields; and that during the time they lived together the defendant refused to give the plaintiff any money to buy clothes or food, but insisted upon making all purchases bimself. She alleges that she has now found out that the defendant acquired a large amount of real estate during cover-ture and also a considerable amount of money and other personal property, although she was never able to ascertain that the defendant had any money, since he was .always very secretive about his business affairs and throughout the marriage led the plaintiff to believe that he was heavily in ■debt; that just before the divorce he informed her that there was a possibility that he would have to go into bankruptcy; and that through such statements he furthered bis plan to deceive and misrepresent his financial worth, thereby taking advantage ■of the plaintiff’s meager education and ignorance of business matters. She further .alleges that for some three years prior to the divorce the defendant sought to coerce plaintiff into bringing an action for divorce, ■threatening that if she did not get a divorce be would institute an action against her and blacken her name in the community, and that he even went so far as advising people in the community in which they lived that the plaintiff was losing her mind and threatening to take steps to have her committed to an institution. She further alleges that the defendant advised her that he would never pay her any money for alimony and that he would go to jail rather than pay her any money decreed by the court. She recites that due to the cumulative effect of the defendant’s physical and mental mistreatment of the plaintiff, her nervous condition, brought about by overwork, illness and being compelled to remain alone in a ranch house on many occasions, she finally succumbed to the pressure upon her and agreed to let the defendant secure the divorce, although she stated she did not want the divorce, and but for the intimidation, coercion and constraint she would have refused to do so. She recited that on various occasions the defendant had offered to give the plaintiff a few hundred dollars in full settlement of her property interest, but that she on each occasion advised the defendant that unless there was a property settlement guaranteeing her one-half interest of the property accumulated by their joint efforts at the time of the marriage she would not go through with the divorce. Finally, as is alleged, on or about September 14, 1952, the defendant informed her that it would be best for both of them if she would secure an immediate divorce and live apart from him, and that at the end of six months after the divorce had been entered, if the parties had not reconciled their divorce and remarried, he would then sell and liquidate his property interests and divide the proceeds, with one-half going .to the plaintiff. The complaint goes on to say that the plaintiff reluctantly agreed to this, and that defendant then procured his son-in-law, an attorney, to prepare the divorce papers and also to prepare an answer and waiver for the defendant to sign and that these papers formed the basis for the entry of a final decree on or about September 19, 1952. She also alleges that there had not been any cash payment or property settlement between the plaintiff and her husband prior to the time she gave her evidence in the divorce case. She also alleged that her attorney was never retained by the plaintiff and the testimony given was testimony she was advised to give by the attorney, which deprived her of impartial counsel. Subsequent to the hearing of testimony, in the *511 divorce action, the defendant gave her a check in the amount of $900 to take care of her immediate needs, pending the ultimate disposition of the property in accordance with their understanding.
She further alleges that the defendant has failed and refused to go through with the property settlement, but plaintiff now has learned something of the nature of the true worth of defendant and gives as an indication of his wealth the sale of a piece of property, which was acquired during coverture, for a consideration in excess of one half million dollars. The complaint has several prayers, but the ones in which we are most interested is that the court, having inquired into the nature of any property settlement which may have been made between the parties, enforce such property settlement or modify such property settlement as equity and the changed position of the parties would warrant, and also that the court determine if and to what extent said property settlement in fact has been carried out by the defendant.
There was attached to the instant complaint a copy of plaintiff’s complaint in the divorce action, together with the transcript of the testimony, of which the following is a part:
“Q. Have you and the defendant reached a cash settlement regarding property? A. Yes.
******
“Q. Now you know that I am the son-in-law of the defendant. Is that right? A. Yes.
******
“Q. Did I advise you and answer your questions satisfactorily as to your rights regarding this property of the defendant, even though it’s in his own name? A. Yes.
“Q. Did I advise you that you would probably be entitled to permanent alimony in this case? A. Yes.
“Q. Under the circumstances I found ? A. Y es.
“Q. And did you instruct me that you didn’t want alimony? A. I told you I did not want it.
“Q. Is that still your intention now ? A. Still my intention and always will be.
"Q. Are you telling the Court now that you are accepting this cash settlement which the defendant voluntarily gave you in complete settlement; that you know what you are doing? A. I do know what I am doing.”
In the divorce decree the plaintiff was granted a divorce, and there was no mention of alimony or a property settlement. The defendant’s motion in the instant case simply stated that the plaintiff failed to show a cause of action upon which relief could be granted.
This court had a similar case before it in Peterson v. Peterson, Fla.App.1958, 107 So. 2d 745, in which the chancellor below had denied the defendant’s motion to dismiss, and motion to strike. We affirmed the decree in a per curiam decision which referred to the cases of Miller v. Miller, 1938, 134 Fla. 725, 184 So. 672; and Rush v. Rush, 1943, 58 Wyo. 406, 133 P.2d 366. In the Miller case, supra, our Supreme Court reversed a decree of the lower court on a petition in the nature of a bill of review to have the decree set aside insofar as it did not award the petitioner any sum for alimony. In so doing the court took occasion to say [134 Fla. 725, 184 So. 675]:
“In view of the liberality of the law relative to alimony and the rights a married woman may have in property of her husband when she assists in its acquisition or conservation, in addition to her usual marital duties and obligations, which should be considered in granting divorces, when the wife is not shown to be unworthy, the application to file the petition should have been *512 granted so that appropriate proceedings may be had thereon, to the end that right and justice shall be administered by due course of law. Sec. 4, Declaration of Rights, Fla.Constitution.”
The facts as proven in the Miller case, supra, are set forth in Miller v. Miller, 149 Fla. 722, 7 So.2d 9. In view of the fact that this is an interlocutory appeal, and that we are called upon to decide only whether plaintiff’s complaint contains equity, we are not concerned at this time with the ultimate outcome.
For the reasons stated we must hold that the chancellor’s decree dismissing the complaint for failure to state a cause of action must be reversed under the authority of Peterson v. Peterson, supra, Miller v. Miller, supra, and Rush v. Rush, supra.
Reversed.
KANNER, Acting C. J., and MOODY, JAMES S., Associate Judge, concur.