140 So.2d 358 (1962)
Myrtle JOHNSON, Appellant,
v.
Hubert L. JOHNSON, As Executor of the Estate of W.A. Johnson, Deceased, Appellee.
No. 2566.
District Court of Appeal of Florida. Second District.
April 25, 1962.
W. Dexter Douglass of Hall, Hartwell & Douglass, Tallahassee, and Farr & Farr, Punta Gorda, for appellant.
Warren E. Hall, Jr., and Stephen H. Grimes of Holland, Bevis & Smith, Bartow, for appellee.
SHANNON, Chief Judge.
The defendant appeals from a final decree which granted the relief prayed for in the plaintiff's complaint for declaratory decree.
The plaintiff below sought a decree declaring that the defendant, the widow of W.A. Johnson, be limited to an antenuptial agreement attached to the complaint and specifically prayed that the lower court find the defendant "entitled to no dower in said estate, no widow's allowance out of the property of said estate and no rents or profits from the homestead of W.A. Johnson since his death." Her defense to the allegations of the complaint alleged fraud through misrepresentation in the procurement of the instrument and specifically alleged a shocking, unfair and unreasonable relation to the amount to be paid to her, she being unaware of, and not having an opportunity to know, the true value of the estate.
In September of 1949, W.A. Johnson, then 71 years of age, and in poor health, was considering marrying his housekeeper, Mrs. Myrtle Selph, then 35 years of age. She had nursed the first Mrs. W.A. Johnson, and prior to the marriage, was making *359 $15.00 a week. The deceased, several days before his contemplated marriage, had consulted an attorney and told him that he was planning to offer Mrs. Selph a specific amount of money from his estate in lieu of any and all other claims she might have by reason of the contemplated marriage. The attorney had advised the deceased that he could prepare a legal and binding document, provided that the deceased would furnish Mrs. Selph with a statement fully and fairly disclosing all assets. Before the marriage the attorney was instructed to prepare such a statement and also to prepare an agreement. Before he began to prepare the antenuptial agreement, the attorney advised Mrs. Selph that she should have separate counsel. She declined, and the agreement was dictated in the presence of both the defendant and the deceased. In so preparing this document, the attorney explained to Mrs. Selph that she was waiving homestead, dower, and all rights of a married woman as to inheritance or other property rights. According to the testimony, she fully understood the agreement, as well as the property disclosure statement. She testified that she read the agreement together with the property disclosure statement about two months after the marriage, and, she said, discovered things about the agreement that she had not known. The agreement about which this controversy centers provided, in part, as follows:
"That in contemplation of the marriage between the parties to this instrument and for the purpose of making a property settlement between said parties, in the event said marriage should terminate in a divorce, and for the further purpose of barring dower, homestead, widow's support and any and all distributive interest and allowance of all kinds accruing to a surviving wife by virtue of the statutes of the State of Florida, now or hereafter in force, of the estate of a deceased husband, IT IS HEREBY AGREED BETWEEN THE PARTIES HERETO AS FOLLOWS:"
The agreement goes on to provide that in the event of a divorce Mrs. Selph should accept $1000.00 in full settlement of all support money, alimony, and attorneys' fees that might be due her. The agreement then provides:
"3.
"In the event of the death of second party, and if the marriage relationship legally exists between the parties hereto at the time of the death of second party, then the first party, as the surviving widow, shall receive out of the estate of the second party, the sum of TEN THOUSAND ($10,000.00) DOLLARS in lieu of dower, homestead, widow's support and in lieu of all distributive interests and allowances of all kind that might be allowable to her as the surviving widow, under the laws of descent and distributions, homestead rights, widow's election to take dower instead of a child's part, or otherwise, which said sum shall be paid as soon as practical by the executor or administrator of the estate of party of the second part.
"4.
"In addition to the sum of money mentioned in Paragraph 3 of this contract, aforesaid, first party shall have the use and occupancy of the home place now occupied by second party, together with the furniture therein, for so long as she desires, provided, however, that in the event she should remarry, such right of the use and occupancy of such home shall immediately terminate.
"5.
"First party, in consideration of the premises aforesaid, and of the settlement hereby entered into, does hereby forever relinquish all rights of dower, homestead, widow's allowance, and all other right, title and interest that she ordinarily would acquire in the estate of the second party upon his death, and *360 agrees that all of said property may be distributed as fully and completely as if she were no longer the wife of second party."
The agreement was executed by both parties and in the presence of two witnesses. At the same time that the antenuptial agreement was signed, Mrs. Selph also signed what is known as the disclosure statement, which listed each specific item of property, real or personal, that was owned by the deceased, totaling $248,470.00. This disclosure statement was also executed by her in the presence of two witnesses. In this disclosure statement every piece of property that the deceased owned was set out in particular.
At the time of his death, February 25, 1960, the deceased left a will naming the plaintiff as executor and stating in Item Three thereof that the deceased and the defendant prior to their marriage had entered into an antenuptial agreement, as a result of which no provision was made in the will for the widow. On September 13, 1960, the defendant filed an election to take dower, and also filed on September 16 of the same year, a petition in the county judge's court, alleging that she had elected to take dower and prayed that dower be assigned; that she be put in possession of the homestead; and also, requested that plaintiff be required to account to her for all rents and profits on the homestead. On the same date she also filed for a widow's allowance, which was granted. In view of certain jurisdictional aspects of the proceedings in the county judge's court, the plaintiff then filed his complaint for declaratory relief in the circuit court, seeking to determine the validity of the antenuptial agreement.
After evidence was taken the circuit court entered a final decree, which reads, in part, as follows:
"* * * The Court finds that the properties listed on said written statement were the properties which the decedent owned as of said date, and no evidence was adduced to show that the decedent owned other or additional properties of any kind or description as of said date. The values assigned to the properties by the decedent were equal to, and in many cases more than, the true values.
"The Court finds that the attorney who prepared the antenuptial agreement dictated it in the presence of the defendant and her deceased husband; that he, the attorney, on at least two occasions during the preparation of the agreement, urged the defendant to seek the advice of other counsel; that the agreement was read to and fully explained to the defendant; that her legal rights were explained to the defendant; that the defendant accepted the terms of the agreement and freely and voluntarily executed it and acknowledged that the decedent had made a full and complete disclosure to the defendant of all of his assets.
"The decedent made a full and fair disclosure of all his assets to the defendant and no fraud was practiced upon the defendant.
* * * * * *
"2. That, pursuant to said agreement, and, specifically, Paragraph 4 thereof, the defendant shall have the use and occupancy of only that portion of decedent's property consisting of the dwelling house, the garage, and other buildings connected with the domestic dwelling place (being limited to the house and appurtances [sic] thereto) as described in the testimony of the plaintiff, Hubert L. Johnson, to wit, the parcel of land with the house and related buildings thereon and the yards adjacent thereto and upon which said house and buildings are located, consisting of an area approximately 100 feet by 150 feet, together with the use of the furniture in the dwelling house and related buildings, for so long as defendant may desire to use and occupy *361 the same during her lifetime provided, however, that in the event the defendant should remarry, such right of use and occupancy of such property shall immediately terminate. * * * The said defendant shall have no rights with regard to the income producing portion of the decedent's property and her rights shall be limited to the dwelling property as first herein described.
"3. That defendant has no right to any of the proceeds realized and to be realized from the grove property or other property used in connection with income production; nor shall the plaintiff be required to account in any manner to the defendant for such proceeds."
The appellant has posed four questions, but this case will be disposed of by treating only two of them herein. Such points, as the court sees it from the facts of this case, are: 1) Is the antenuptial agreement valid and enforceable? And 2) May the homestead rights of the widow be divested by the provisions of the antenuptial agreement?
In regard to the first point, we are concerned only with the question of whether or not the deceased at the time of execution of the antenuptial agreement and the disclosure statement made a full and fair disclosure of the extent of his property and the defendant fully comprehended the same. The appellate courts of this state have on several occasions recognized the validity of antenuptial agreements of the type here under consideration. See, e.g., North v. Ringling, 1940, 149 Fla. 739, 7 So.2d 476; and Northern Trust Co. v. King, 1942, 149 Fla. 611, 6 So.2d 539. As to full and fair disclosure of financial condition, the Supreme Court of Florida in Weeks v. Weeks, 1940, 143 Fla. 686, 197 So. 393, dwelt at some length on certain decisions of the Supreme Court of Illinois wherein it was held that when the provision made for the prospective wife in the antenuptial agreement is disproportionate to the husband's property, the burden is then cast upon the latter to show full and fair disclosure in the execution of the agreement. Absent the disproportionate feature, the presumption attaching itself to an antenuptial agreement is well illustrated by the following language of the Supreme Court of Pennsylvania in In re Estate of Kaufmann, 1961, 404 Pa. 131, 171 A.2d 48:
"In our examination of the evidence presented by this voluminous record, certain principles, well established and long recognized in this area of the law, must be our guide: (1) an antenuptial agreement  even though the parties occupy toward each other a relationship of trust and confidence  is presumptively valid and binding upon the parties; while the law requires that each party to the agreement act with the utmost good faith and candor toward the other party, the law presumes that this requirement has been fulfilled and the burden of proving the invalidity of an antenuptial agreement rests upon the party who so charges * * *"
In Northern Trust Co. v. King, supra, the antenuptial agreement reads, in part:
"`she the said Henrietta Latham as such surviving widow shall receive out of the estate of the said Andrew W. King the sum of Five Thousand Dollars ($5000.00) in lieu of Dower, Homestead, Widow's Award and in lieu of all distributive interests and allowances of all kinds out of the estate of said party of the first part.'
* * * * * *
"The primary purpose of the contracting parties obviously was to make full settlement for dower or other interest in the estate before the marriage ceremony. * * *"
In upholding this agreement the court said:
"We are persuaded to the conclusion that it was the intent of the contracting parties to withhold from the intended *362 wife completely, absolutely and unconditionally any claim of dower or other interest in the estate of the other contracting party."
In the case of North v. Ringling, supra, the antenuptial agreement, like the one in the present case, was quite comprehensive and provided that each party would:
"* * * `surrender their rights, interest, dower, homestead and courtesy in and to the estate and property of the other in whatsoever form or manner identified for all time, and that the promise of marriage herein contained, and its consummation by the performance of marriage is accepted in lieu of all right or interest that the one party may or otherwise have in the estate of the other in any form, whether during their lifetime or upon the decease of the one or the other, either as heir, legatee, distributee, homestead, dower, or courtesy'."
In discussing the antenuptial agreement in the North case, the court stated:
"Appellant treats the antenuptial agreement as a nullity and as having no effect on Mrs. Ringling's right to dower. There is not a line in it, however, that can be construed other than that by it she released every right she had to dower in the estate of John Ringling in consideration of marriage. When read in connection with the postnuptial agreement, it is equally as certain that the effect of the latter was to restore her right to dower in all his estate but the museum properties. Except for the postnuptial agreement, Mrs. Ringling had no dower interest in the Ringling estate. * * *"
In the present case the evidence as to full and fair disclosure is overwhelming. Unless the defendant had shown fraud or other ill dealing by the deceased, which she has not done, the decree of the lower court should and will be affirmed.
The defendant takes the position that "homestead rights cannot be divested from surviving head of the family without full consideration and without clear intention of such spouse to divest the homestead." The evidence in the instant case shows clearly that when the defendant entered into the agreement, she intended to divest herself completely of all right to homestead.
There is no Florida law directly in point on this question. The defendant cites the case of In re Rothman's Estate, Fla.App. 1958, 104 So.2d 607, as authority for the proposition that a widow cannot by antenuptial agreement waive the right to homestead. This case is not authority for the particular question now before us. Instead, the holding there was that the county judge was without jurisdiction to construe an antenuptial agreement involving title to real property. In the antenuptial agreement herein, it is provided:
"In addition to the sum of money mentioned in Paragraph 3 of this contract, aforesaid, first party shall have the use and occupancy of the home place now occupied by second party, together with the furniture therein, for so long as she desires, provided, however, that in the event she should remarry, such right of the use and occupancy of such home shall immediately terminate."
The language of the agreement using the words, "home" and "home place" should be read in connection with the other provisions of the agreement. The testimony shows that the home of the deceased was a clearly definable house and surrounding area used for domestic purposes and the language set out above when related to the agreement as a whole clearly shows that the chancellor correctly interpreted the contract. Other points raised by the appellant have been carefully considered and error having not been made to appear the final decree appealed is hereby affirmed.
SMITH and WHITE, JJ., concur.