**BLANCHE H. MILLER v. RAYMOND F. MILLER**

7 So. (2nd) 9                         Division B
March 20, 1942

John R. Parkinson, for appellant.

Horace D. Riegle and Hull, Landis & Whitehair, for appellee.

CHAPMAN, J:

This case is before the Court on appeal from a final decree in behalf of the defendant below (husband) entered by the Circuit Court of Volusia County, Florida. The petition, in the nature of a bill of review, sought to set aside and annul a final decree of divorce previously entered in so far as the same failed to provide permanent alimony, support and an interest of the plaintiff (wife) in property appearing in the name of the defendant, and that permanent alimony be allowed the wife, who was the plaintiff in the case at bar and, in the divorce suit. An order denying the filing of the petition was reversed by this Court. See Miller v. Miller, 134 Fla. 725, 184 So. 672.

On the going down of the mandate, the defendant, Raymond F. Miller, filed an answer to the petition in the nature of a bill of review previously sustained by this Court. The answer in each detail admitted, denied, confessed or traversed each material allegation of the petition. The issues being framed, the respec-

tive parties submitted testimony in support thereof before the Honorable H. B. Frederick, Circuit Judge. The testimony and exhibits consist of several hundred pages. The chancellor below heard argument of counsel and then entered a final decree in behalf of Raymond F. Miller, the defendant. Blanche H. Miller perfected her appeal therefrom to this Court.

On May 4, 1936, Blanche H. Miller filed her bill of complaint in the Circuit Court of Volusia County against Raymond F. Miller, praying for a divorce on the grounds of extreme cruelty and habitual indulgence of ungovernable temper. On May 13, 1936, the defendant, Raymond F. Miller, filed an answer to the bill of complaint in which he denied the charges of extreme cruelty and habitual indulgence in violent and ungovernable temper. Testimony was taken before the circuit judge on the 22nd day of May, 1936, and, after hearing the testimony held that the equities of the cause were with the plaintiff, Blanche H. Miller, and that the husband, Raymond F. Miller, was guilty of extreme cruelty and indulgence in a violent and ungovernable temper, and granted the plaintiff, Blanche H. Miller, a divorce.

The record discloses that Raymond F. Miller, shortly after the entry of the final decree of divorce, paid to Blanche H. Miller the sum of $6,000.00 as a full and complete alimony settlement, and in addition thereto paid to her attorney the sum of $250.00 as a fee for handling the divorce suit. In the suit at bar Blanche H. Miller contends that the alimony stttlement was grossly inadequate in that her husband owned and possessed property valued at from $75,000.00 to $100,000.00, and that at the time of the acceptance of the sum of $6,000.00 as full alimony settlement she

was in bad health and as a result her mental faculties were impaired and she was physically and mentally unable to decide such an important question; that for a long time prior to the filing of the divorce suit she had been mistreated and abused by her husband;. that she was neurotic and had several nervous breakdowns, and that she was forced and coerced to accept the sum of $6,000.00 as a complete alimony settlement to escape the then deplorable conditions surrounding her so that she might regain her health.

Shortly after the entry of the divorce decree and the receipt of the $6,000.00, Blanche H. Miller drove an automobile from Daytona Beach, Florida, to Dallas, Texas; thence from Dallas, Texas, to Marietta, Ohio; and from Marietta, Ohio, to Baltimore and Washington, and thence back to Daytona Beach, Florida. She obtained counsel on her return to Daytona Beach and on November 20, 1936, instituted against Raymond F. Miller the suit at bar.

While several questions for adjudication are posed by counsel for the respective parties based largely upon the adduced testimony, but few questions of law are here presented for determination by this Court.

The law applicable to original bills in the nature of bills of review and bills of review is well established. In the case of Golden Gate Development Co. v. Ritchie, 140 Fla. 103, 191 So. 202, we held:

"Bills of review and original bills in the nature of bills of review are controlled largely by the same general principles. See Andrew v. Hecker, 132 Fla. 759, 182 So. 251. Bills of review are required to be filed within the six months' period allowed by the statute in which to take appeals and may be maintained because of matters discovered after entry of final decree

and were not available for presentation to the court prior to the decree. See Shaw v. Hamm, 133 Fla. 722, 183 So. 19. Original bills in the nature of bills of review brought for the purpose of impeaching a final decree are addressed largely to the sound discretion of the court and can be permitted or allowed without leave of the court. It is usually considered as a new suit and its objective is to impeach a final decree obtained by fraud or some other equitable reason. See Miami Bank & Tr. Co. v. Mahlstedt, 107 Fla. 282, 144 So. 659; Hamilton v. Flowers, 134 Fla. 328, 183 So. 811; Gamble v. Gamble Holding Co., 120 Fla. 340, 162 So. 886."

Courts of equity have the power and jurisdiction to grant relief and set aside and annul judgments and decrees obtained by fraud, deceit, artifice or trickery. See Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893. The burden of proof under the law was on the plaintiff, Blanche H. Miller, to establish by competent evidence fraud, deceit, duress, coercion or overreaching on the part of Raymond F. Miller when obtaining an alimony settlement with her. Agremeents made in good faith, free from fraud, deceit or trickery relating to alimony between husband and wife, or the adjustment of their property rights, though made in contemplation of divorce, can or may be sustained or upheld by the courts. See Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371; Mooty v. Mooty, 131 Fla. 151, 179 So. 155; Norton v. Norton, 131 Fla. 219, 179 So. 414; Rice v. Rice, 148 Fla. 620, 4 So. (2nd) 850.

The testimony discloses that the matrimonial sea was calm and smooth and the sailing was enjoyed by the parties until the time when the husband, being the

only child, inherited property upon the death of his father and additional property when his mother died. The property consisted of apartments located at Daytona Beach, rental property and a farm in the State of Ohio. The husband was the payee of a large real estate mortgage against valuable property at Daytona Beach. The plaintiff's testimony fixed the value of defendant's holdings at a sum between $75,000.00 and $100,000.00, with an annual income at approximately from $7,000.00 to $9,000.00. The husband's testimony placed a value on his holdings at approximately $30,000.00, with a *net* annual income of less than $2,000.00. The market value of the property could reasonably be placed between the figures contended for by the parties.

The wife wanted some of this property to stand in her name, while the husband did not appreciate her viewpoint. She wanted him to buy a lot and construct a home thereon to conform to her fancy, but the husband found real estate an unprofitable investment. She wanted a bank account in her own name, but the husband reasoned that since she was a wife and not engaged in business the bank account was unnecessary, and that household expense could be paid from his account and the family budget thereby held to a reasonable sum. These several demands occurred after the husband inherited considerable property from his parents.

For several months prior to the filing of the divorce suit the wife's health was not good. This is clearly established by the testimony of many of the plaintiff's friends and frankly admitted by the husband, as he had on many occasions taken her to a physician. There is a conflict in the testimony only as to the degree of

her illness. It is asserted that the defendant husband reached with the appellant an alimony settlement, contrary to her best interests, at a time when she was ill, mentally abnormal, not in the possession of all her faculties, and shortly after the parties had exchanged blows over pictures of the defendant's grandchildren by a former marriage. Likewise, the husband's association with other women augmented the tension then existing between the parties.

The chancellor below sustained objections of counsel to the admission of testimony showing the husband's relations with a woman then residing in room No. 22 of the apartment building. If the wife was forced by the conduct of her husband to obtain a divorce and accept the alimony settlement, certainly this testimony should have been admitted. Many other adverse rulings to the appellant appear in the record. The testimony of Dr. Klock, relied upon to establish the allegations of the bill to the effect that the plaintiff was ill, mentally abnormal, and not physically able to make the alimony settlement here challenged, fails to establish the same. The physician treated the appellant, but was unable to testify as to her physical condition when the divorce decree was entered and the settlement made.

It is our conclusion that the appellant made a settlement with her husband of her alimony claims for an inadequate amount when considering the value of his property holdings at the time that the divorce decree was entered, but we fail to find evidence in the record sufficient to establish fraud, coercion, deceit or overreaching on the part of the husband as required by the decisions of this Court. She was mentally competent to engage counsel and file suit and later appeared in

court and gave testimony to support the charges alleged as a basis for a decree. The decree was entered and she accepted the money as a full settlement. We are without authority under these circumstances to interfere. We fail to find reversible error in the record.

Sections 4986, 4987 and 4988 C.G.L., grant courts of chancery power to make orders and decrees touching alimony, suit money and counsel fees. The appellee is hereby ordered to pay an attorney's fee in the sum of $500.00 to the plaintiff and her counsel of record, and likewise all costs incurred in the prosecution of the suit at bar. The decree appealed from is affirmed but modified as to the payment of all costs and the aforesaid sum as attorney's fees. (See Rice v. Rice, *supra*.)

It is so ordered.

BROWN, C. J., TERRELL and THOMAS, JJ., concur.