95 So.2d 584 (1957)
Isabel M. COWEN (Papert), Appellant,
v.
Edward L. COWEN, Appellee.
Supreme Court of Florida, Special Division B.
June 5, 1957.
Sibley & Davis and Thomas H. Barkdull, Jr., Miami Beach, for appellant.
Brigham, Black, Niles & Wright, Miami, for appellee.
SANDLER, Associate Justice.
This appeal brings for review an order or decree dismissing with prejudice a bill in the nature of a bill of review filed by the appellant, plaintiff in the lower Court. By her bill the plaintiff seeks to have the Court vacate and set aside the separation agreement of the parties in the divorce case and that part of the decree of divorce which satisfies, confirms and approves the separation agreement. By the terms of this agreement, which was later incorporated in the divorce decree, the plaintiff received 100 shares of A.T. & T. common stock of the then value of $15,000 plus the sum of $100 each week for 525 weeks, the payment of which to be secured by cash or securities of the market value of $50,000 to be deposited with a national bank in the city of Miami Beach.
The reason or grounds for such relief is that the
"plaintiff avers that said separation agreement was entered into by reason of a breach of confidence on the part of her attorney and positive misrepresentation on the part of the defendant; that it is contrary to equity and good *585 conscience for the plaintiff to be held and bound by said separation agreement under the terms and provisions as herein averred".
The complaint further alleges that at the time said agreement was entered into the plaintiff possessed no knowledge of the wealth of the defendant and she had no means of ascertaining the defendant's financial status, and seeks an allowance of $500 per week.
The question involved in this appeal is whether the Chancellor, under the evidence and the applicable law, properly dismissed the complaint with prejudice.
The parties to this proceeding were married in the city of New York on the 21st day of September, 1950, and the marriage lasted until the 16th day of July, 1953, the date of the final decree, a period of approximately two years and ten months. Immediately upon the marriage, the parties embarked on a honeymoon trip to California, which lasted three to four weeks, driving in a brand new Cadillac "presumably a wedding gift for me (plaintiff) so I was told". During the first year of their marriage the plaintiff testified she spent about $7,500 for clothes and purchased a fur jacket for $5,000; the second year she spent about $3,000 for clothes and her husband never objected and "there was no special limit" and she could buy anything she wanted; that upon their return to Miami Beach the parties lived lavishly, giving expensive parties, one of which the plaintiff testified cost $1,500 for between 50 and 60 people; that the defendant deposited $5,000 in the bank for her account; that he had offered to set up a trust fund for her in the sum of $50,000; that at one time they contemplated the purchase of a home on Miami Beach for which the defendant offered the sum of $72,000. And it is further alleged in her complaint that the living expenses for the two of them were approximately $40,000 a year.
The record is replete with evidence of the lavish scale on which the parties lived and the items herein mentioned, though briefly, are indicative of such scale and clearly indicate the plaintiff could not help but be aware of the defendant's financial status, that he was a man of considerable financial means, and she could not possibly have been ignorant thereof, as she alleged.
At the time of the marriage of the parties, the plaintiff was 49 years of age, had been a widow for approximately 20 years, was the mother of two adult children, and was earning as a sales woman from $125 to $150 a week, so that the plaintiff could not have been without ordinary or average business experience.
The separation agreement was entered into on the 12th day of May, 1953, the bill for divorce filed July 6, 1953, and in the meantime in the latter part of May of the same year, the plaintiff took a trip to New York where she consulted her attorney who, according to her testimony, had represented her for about 18 or 19 years, and discussed the separation agreement with this said attorney. She then returned to Miami Beach and in the company of the defendant visited an attorney who had represented her husband in some previous litigation, with all of which she was familiar, and there the parties agreed upon the divorce proceeding. She now complains that this attorney did not properly represent her, but all of the details of the divorce case were agreed upon, there was no dispute between the parties, and she was advised by the attorney that he was willing to take the representation because of the complete accord between the parties, there being nothing in dispute.
The record fails to support her charge that she was not properly represented, that she was not fully aware of the terms of the settlement, and that she did not have full and complete opportunity to consider the terms thereof prior to the *586 time the bill for divorce was filed. Furthermore, at the time of the hearing before the Special Master, the plaintiff was interrogated specifically as to the terms of the agreement, whether or not she understood it and whether or not it was her voluntary agreement, to all of which she answered in the affirmative.
The plaintiff charges that the defendant had advised her that he had suffered extreme stock market losses, which is the only evidence which might tend to support her allegation that she was unaware of the defendant's wealth, but her testimony is that this conversation took place about eight months prior to the settlement and that their scale of living remained the same until the divorce decree was entered.
The general rule applicable to a complaint of this kind is set out in Masilotti v. Masilotti, 158 Fla. 663, 29 So.2d 872:
"In suit to set aside decree granting plaintiff's husband a divorce and their property settlement agreement, burden was on plaintiff to establish by competent evidence husband's alleged fraud, deceit, duress, coercion, or overreaching in obtaining settlement."
Likewise in the case of Gross v. Gross, 154 Fla. 649, 18 So.2d 538, the Court, quoting with approval from the case of Miller v. Miller, 149 Fla. 722, 7 So.2d 9, said:
"The burden of proof under the law was on the plaintiff, Blanche H. Miller, to establish by competent evidence, fraud, deceit, duress, coercion or overreaching on the part of Raymond F. Miller when obtaining an alimony settlement with her."
To the same effect is Adler v. Becker, 130 Fla. 330, 178 So. 117, and Webber v. Webber, 156 Fla. 396, 23 So.2d 388.
This case was heard before the trial Judge who had the opportunity of seeing and hearing the witnesses and the rule is too well established to require the citation of authorities that where the evidence is heard by the Chancellor and the witnesses are before him, the Chancellor's findings should not be disturbed by the appellate court unless shown to be clearly erroneous. The Chancellor in his decree stated
"the testimony of the plaintiff, Isabel M. Papert, before this Court is not of such weight and credit that the Court could justly grant her the relief which she seeks".
The plaintiff discredited her own testimony when she disclosed to the Court that on numerous instances she deliberately gave false testimony under oath in order to attain her desired ends. The divorce decree in this case, which approved the settlement, was entered on the 6th day of July, 1953, and this appeal filed March 11, 1955, during all of which time the defendant complied with the terms of the agreement and during all of which time the plaintiff received and accepted the benefits and fruits thereof.
The decree appealed from is amply supported by the record and, being without error, it must be and is hereby
Affirmed.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.