166 So.2d 466 (1964)
Edith CANTOR, Appellant,
v.
Gertrude PALMER and Harold S. Cantor, as Executors of the Estate of William E. Cantor, Deceased, Appellees.
No. 63-650.
District Court of Appeal of Florida. Third District.
June 30, 1964.
Rehearing Denied August 14, 1964.
Albert L. Weintraub and A. Jay Cristol, Miami, for appellant.
Milton M. Ferrell, Miami, and B.C. Fuller, Miami Beach, for appellees.
Before BARKDULL, C.J., and CARROLL and HORTON, JJ.
*467 BARKDULL, Chief Judge.
Appellant, plaintiff in the trial court, appeals from an adverse final decree upholding the validity of an antenuptial agreement.[1]
A determination of this cause requires a review of the Supreme Court decision rendered in Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17, wherein Mr. Justice Caldwell, in commenting upon similar problems relative to antenuptial agreements, said the following:
"* * * [1] A valid antenuptial agreement contemplates a fair and reasonable provision therein for the wife, or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property. The term `approximate' is, for this purpose, held synonymous with `near', `close to' or `approaching'. * *"
Measuring the record in the instant cause against the principles enunciated in Del Vecchio v. Del Vecchio, supra, it appears that this case is distinguishable from the facts as recited in the Del Vecchio case in the following particulars: (a) The wife, in the instant case, thought the prospective husband was worth substantially more than he was actually worth at the time of the execution of the agreement. It was stipulated that he was worth approximately $123,000.00 at the time of his death, and the evidence showed that at the time of the execution of the agreement in 1953 he was worth between $65,000.00 and $80,000.00, although the wife thought he was worth between $250,000.00 and $300,000.00. (b) That, at the time of the execution of the agreement, the prospective wife was 51 years of age and the prospective husband was 61 years of age, and the chancellor found that the "plaintiff gave every indication of being perfectly normal; if not above average in intelligence, perception and knowledge generally", contrasted with the fact that in the Del Vecchio case the prospective wife was a waitress. (c) That the prospective wife, in the instant case, had independent counsel of her own choosing and reviewed the provisions of the agreement with her independent counsel, without the presence of her prospective husband, Therefore, the determination of this cause should be made in consideration of that portion of the Del Vecchio opinion, wherein Mr. Justice Caldwell said the following:
"* * * [2, 3] Inadequacy of provision for the wife does not in itself vitiate an antenuptial agreement. If, when she signed the contract freely and voluntarily, she had some understanding of her rights and had been fully informed by the husband as to his property or if, notwithstanding the husband's failure to disclose, she had or reasonably should have had a general and approximate knowledge of the character and extent of his property she will be bound. * * *"
Antenuptial agreements, per se, are not void in this State, but merely voidable. See: The Northern Trust Co. v. King, 149 Fla. 611, 6 So.2d 539; North v. Ringling, 149 Fla. 739, 7 So.2d 476; Cohen v. Rothman, Fla.App. 1961, 127 So.2d 143; Johnson v. Johnson, Fla.App. 1962, 140 So.2d 358; *468 11 Fla.Jur., Dower, § 13; 17 Fla.Jur., Husband and Wife, § 46. They have long been recognized as an appropriate method for a prospective husband to protect his estate from the dower claim of a prospective wife [this recognition occurring as early as 1875 in the case of Nalle & Co. v. Lively, 15 Fla. 130] and when said agreements are fairly entered into and both parties are represented by independent counsel of their own choosing [and it is apparent that the prospective wife had at least "approximate" knowledge of the potential resources of the prospective husband] they should be upheld; particularly in view of the fact that generally, as in this case, the complaining wife awaits until death has sealed the lips of her husband before she makes an attack on the agreement. It is apparent from the record that there was no designed concealment in this cause by the deceased. Therefore, it appears that the appellant has failed to establish any fraud or concealment which would require the setting aside of the agreement. The mere fact that the assets of each of the individuals at the time of the execution of the antenuptial agreement may be disproportionate should not in and of itself, ipso facto, void the agreement if the complaining party was aware of/or should have been aware of the disproportionate condition of their respective assets. It is the fraudulent concealment or active misrepresentation as to assets which warrants the setting aside of the agreement, and not the mere fact of disproportionate means at the time of its execution.
The appellant urges that because the contract was, on its face, unreasonable the burden shifted to the appellees to establish the validity of the agreement, citing as authority Del Vecchio v. Del Vecchio, supra. Conceding this to be a true principle, it appears from the record on appeal that there was evidence before the chancellor from which he could have validly concluded as he did that the agreement was enforceable. Therefore, I would affirm the final decree here under review.
Affirmed.
NOTES
[1] "* * * Under the antenuptial agreement both parties released any and all interest either might have in the estate of the other except such sums as were provided for in the Last Will and Testament of the parties. The Last Will and Testament of WILLIAM E. CANTOR dated July 25, 1961, provided that EDITH CANTOR would receive $5,000.00 in cash plus one-half (1/2) of the income from property in Homestead, Florida. It further provided that in the event of a sale of said property, then one-half (1/2) of the proceeds thereof was to be in trust for the benefit of EDITH CANTOR, with her to receive the income thereof plus $1,000.00 per year principal, so long as she was single and to terminate upon her death. * * *"