206 So.2d 416 (1968)
Sari POSNER, Appellant,
v.
Victor POSNER, Appellee.
No. 67-107.
District Court of Appeal of Florida. Third District.
January 23, 1968.
Rehearing Denied February 20, 1968.
Broad & Cassel and Lewis Horwitz, Sibley, Giblin, Levenson & Ward, Miami Beach, for appellant.
Frates, Fay, Floyd & Pearson and Guy B. Bailey, Jr., Miami, for appellee.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
HENDRY, Judge.
This is an appeal from a final decree granting a divorce to the husband and awarding alimony and child support money to the wife.
The wife, plaintiff below, brought suit for alimony unconnected with divorce on the ground of extreme cruelty, for support of the children of the parties, and for a decree that the antenuptial agreement between the parties was void. The husband denied the material allegations of the complaint, except the facts of the marriage and the existence of children, and counterclaimed for divorce. The wife denied the material allegations of the counterclaim.
The chancellor entered a final decree granting a divorce to the husband, providing $1,200.00 a month as support for the two children, holding the antenuptial agreement valid, and awarding $600.00 per month alimony to the wife, the amount of alimony being in accordance with the terms of the antenuptial agreement.
The antenuptial agreement contains the following provision:
* * * * * *
"9. In the event of the dissolution or termination of this marriage contemplated between the parties hereto, Sari Frazier agrees that she will accept the sum of Six Hundred Dollars ($600.00) per month, in lieu of alimony, support or financial reimbursement of any kind whatsoever and that she will assert no further claim beyond the said sum of Six Hundred Dollars ($600.00) per month, the payment of which shall continue until her death or remarriage, whichever event may first occur. In the event of the death of Victor Posner, while such payments of Six Hundred Dollars ($600.00) per month are being made, the said payments shall terminate and in place thereof, Sari Frazier shall receive a lump sum payment of Twenty-One Thousand, Six Hundred Dollars ($21,600)."
* * * * * *
*417 In regard to the antenuptial agreement, the final decree recited:
* * * * * *
"The antenuptial agreement dated December 16, 1960, entered into evidence as Plaintiff's Exhibit No. 2 is a legally binding contract between the parties.
* * * * * *
"The antenuptial agreement entered into by and between the parties and marked as Plaintiff's Exhibit No. 2 in the record is adopted by reference and made a part of this final decree.
"As per the terms of the antenuptial agreement adopted and made a part of this final decree in the paragraph above the Defendant, Counter-Plaintiff, Victor Posner, is directed and ordered to pay to the Plaintiff, Counter-Defendant, Sari Posner, the sum of Six Hundred and No/100 ($600.00) Dollars per month as permanent alimony * * *".
* * * * * *
The wife now brings this appeal, and the husband files cross assignments of error.
The wife's first contention is that the evidence was insufficient to sustain the granting of a divorce. We find this contention to be without merit and affirm the granting of the divorce.
Mrs. Posner's next point on appeal is that the court below was not bound by the terms of the antenuptial agreement in awarding alimony. We agree with this contention.
The law is settled in Florida that the chancellor has sole discretion in awards of alimony.
Section 65.08, Florida Statutes, F.S.A., provides:
"In every decree of divorce in a suit by the wife, the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just; but no alimony shall be granted to an adulterous wife * * *".
In Dawkins v. Dawkins, Fla.App. 1965, 172 So.2d 633, the District Court of Appeal, Second District, held:
"Fla. Stat. § 65.08, F.S.A., vests in the chancellor the sole discretion to settle questions relative to alimony and the parties may not by contract divest him of this discretion. Although fair and equitable agreements which are not violative of public policy may be incorporated into a divorce decree, there is no statute or rule of law which says they must be."
The holding in Dawkins, supra, was recognized and followed by this Court in the case of Gelfo v. Gelfo, Fla.App. 1967, 198 So.2d 353, wherein Judge Pearson, speaking for the court, wrote:
* * * * * *
"It is true that the conclusion reached in the Dawkins' case and in this case may be difficult to reconcile with statements in other cases to the effect that a property settlement agreement has the same validity as any other agreement between competent parties [citing authorities]. Nevertheless, we believe that the holdings in the cited cases do not preclude a finding by a chancellor that a provision as to the alimony and support is unconscionable when the record demonstrates support for this finding."
Under Florida law, as we construe it, the chancellor, in divorce proceedings, is given full power at the time he initially enters a divorce decree to fix rights of the parties. The court has the right to approve a prior separation agreement, to modify such agreement, or to dispose of any agreement in its entirety. But once the agreement is approved, it becomes the order of the court, and the decree becomes the basis of the *418 settlement. The court may find an antenuptial agreement entered into between the parties to a divorce suit helpful in arriving at an appropriate alimony award, but the court is not bound to accept the judgments of the parties on the issue. For these reasons, we must hold that the chancellor was in error in construing the antenuptial agreement to be "a legally binding contract between the parties." Therefore, we reverse the portion of the final decree which awards the sum of Six Hundred Dollars per month as alimony, and remand the cause to the chancellor with directions to enter an order awarding alimony based upon an exercise of the chancellor's sound judicial discretion.
We have examined and considered the cross assignments of error and the contentions of appellee in regard to the award of child support. We find those contentions to be without merit, and hence, that portion of the final decree awarding support payments to the children is affirmed.
Affirmed in part; reversed in part and remanded with directions.
CHARLES CARROLL, Chief Judge (concurring specially).
I concur in the judgment, affirming the provisions of the decree granting the divorce and as to custody and child support, and reversing the provision of the decree which held valid the antenuptial agreement as to the amount of alimony to be received by the wife in event of divorce and allowing her the sum specified in the contract. However, I would place the latter ruling of this court squarely on the ground that the alimony provision of the antenuptial contract is against public policy and void.
Antenuptial contracts which provide, in the event of separation or divorce, for waiver of alimony or the amount to be paid as alimony or in lieu of alimony, are viewed almost without exception as being against public policy and void. Lindsay v. Lindsay, Fla.App. 1964, 163 So.2d 336; Oliphant v. Oliphant, 177 Ark. 613, 7 S.W.2d 783, 788; Reynolds v. Reynolds, 217 Ga. 234, 123 S.E.2d 115, 133; Stratton v. Wilson, 170 Ky. 61, 185 S.W. 522, 525; Cohn v. Cohn, 209 Md. 470, 121 A.2d 704, 706; Scherba v. Scherba, 340 Mich. 228, 65 N.W.2d 758; Stefonick v. Stefonick, 118 Mont. 486, 167 P.2d 848, 164 A.L.R. 1211; Hillman v. Hillman, Sup., 69 N.Y.S.2d 134, aff'd 273 App.Div. 960, 79 N.Y.S.2d 325; Motley v. Motley, 255 N.C. 190, 120 S.E.2d 422, 424; Crouch v. Crouch, 1964, 53 Tenn. App. 594, 385 S.W.2d 288, 293 (cert. den.); Caldwell v. Caldwell, 1958, 5 Wis.2d 146, 92 N.W.2d 356, 361; 24 Am.Jur.2d Divorce & Separation, § 12; Annot. 70 A.L.R. 826; 2 Nelson, Divorce and Annulment, §§ 13.02, 13.22; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts, § 90-3b. The only case which has come to my attention holding contra is Hudson v. Hudson, Okl. 1960, 350 P.2d 596.
The reasons of policy which render such an antenuptial contract provision invalid are well stated in the annotation in 70 A.L.R. 826, 828, supra, viz.:
"An antenuptial contract limiting the husband's liability to a certain sum in case of separation invites disagreement, encourages separation, and incites divorce proceedings, thereby tending to overthrow and destroy those principles of the law of marriage requiring that the husband and wife live together during their natural life, and that the husband, within his financial ability, shall support his wife; and because of the interest that the public has in such causes, the question of alimony is a matter for the court, and the action of the court will not be controlled by an antenuptial agreement of the parties on this subject."
Regarding the public policy relating to such a provision of an antenuptial contract *419 the Tennessee Court in Crouch v. Crouch, supra, stated:
"* * * Such contract could induce a mercenary husband to inflict on his wife any wrong he might desire with the knowledge his pecuniary liability would be limited. In other words, a husband could through abuse and ill treatment of his wife force her to bring an action for divorce and thereby buy a divorce for a sum far less than he would otherwise have to pay."
I do not consider it is sufficient for this court to say that when such an antenuptial contract specifying an amount for alimony is presented and relied upon in a divorce suit, the trial court is not "bound to accept" it. To so state is to imply that the trial court has an election to accept or to reject an antenuptial contract relating to alimony. Were that the case, the parties to such a contract could not know whether it would be enforced or rejected by the court. Such agreements should not be placed in a legal status under which they may or may not be recognized and enforced, as a trial court shall determine in each case. Agreements of that kind either are against public policy or they are not.
The necessity for a clear and definite decision on the question of the validity vel non of such a provision of an antenuptial contract is enhanced by confusion which may have been created by statements in earlier decisions of this court. For example, in Lindsay, supra, Fla.App. 1964, 163 So.2d 336, 337, this court said that in the Del Vecchio case[1] the Supreme Court, by implication, held the parties to an antenuptial contract could determine the amount of alimony to be paid in event of divorce.[2] Also, in Sack v. Sack, Fla.App. 1966, 184 So.2d 434, where a husband sought divorce and relied on an antenuptial contract that the wife would accept one dollar in lieu of alimony, we reversed on other grounds and remanded for decision on the merits of the divorce, stating that if the divorce is granted "then the question of validity of the contract will be material, as it affects alimony, and should be measured by the chancellor under the rule announced in the case of Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17." The writer of this concurring opinion was the author of the opinion in the Sack case, and I now regard the statement in Sack that validity of the antenuptial agreement for alimony should be measured by Del Vecchio, as being contrary to the law announced in the authorities cited hereinabove which indicate the antenuptial agreement for alimony in the Sack case was against public policy and void, aside from consideration of any prerequisites for an antenuptial property settlement agreement as dealt with in Del Vecchio.[3]
In my opinion, therefore, our reversal of the trial court's ruling upholding the provision of the antenuptial contract relating to alimony should be placed on the ground that the agreement is against public policy and void, and on remand the trial court should be directed to proceed to award alimony, without regard to the contract,[4] based upon consideration of the recognized elements including mainly the wife's needs and the husband's ability to pay.
SWANN, Judge (dissenting).
I respectfully dissent from the views of the other opinions only as to the adjudication *420 that the antenuptial agreement herein was not "a legally binding contract between the parties," and was void because it violates "public policy."
Judge Hendry, in overruling the trial judge in the majority opinion, holds that a judge in a divorce action, involving an antenuptial agreement, may consider the agreement in arriving at an appropriate alimony award, but that the judge must disregard it as "a legally binding contract between the parties." Certainly, I believe there is no doubt that it could be valid and legally binding as to matters other than alimony. Essentially, this is a ruling that under all, or any, circumstances, an antenuptial agreement providing for an amount to be paid to the wife in lieu of alimony is illegal in Florida, and may not be the proper subject matter of a valid contract.
Chief Judge Carroll, in his special concurring opinion, squarely holds that "the alimony provision of the antenuptial contract * * * is against public policy and void." The net effect of the majority, then, is to hold that alimony provisions in antenuptial agreements are not valid in Florida under any set of circumstances.
The record reveals that the plaintiff-wife knew the man for several years prior to their marriage. She was a working girl and he was a millionaire. She wanted to marry him and he was reluctant. On her own initiative, she urged him to have an antenuptial agreement drawn up in order that they might marry, and he did so.
The agreement was given to her, with a list of the man's assets, prior to the marriage and she discussed it freely and completely with her family, her lawyers, his son, and his attorney-accountant. It was executed by both parties and there is no question but that it was made in good faith and there was no fraud, duress, concealment, overreaching, deceit or trickery involved. It revealed, and she knew, that he had, prior to the execution of the antenuptial agreement and the marriage, transferred and conveyed the greater portion of his property to an irrevocable trust for the benefit of his children by a prior marriage and for other members of his family, reserving to himself the income of the trust for life.
I think the agreement was made under these facts, by the woman as the moving party, not in contemplation of divorce, but in contemplation of marriage.
The parties lived together for about five years and the wife then sued the husband for alimony unconnected with divorce. He counterclaimed and was awarded a final decree of divorce from the wife on the grounds of extreme cruelty. The court below, after lengthy hearings, found the antenuptial agreement to be a legally binding contract, adopted it, and made it a part of the final decree by reference.
Antenuptial agreements have long been held valid in Florida. North v. Ringling, 149 Fla. 739, 7 So.2d 476 (1942); Weeks v. Weeks, 143 Fla. 686, 197 So. 393 (1940); Nalle & Co. v. Lively, 15 Fla. 130 (1875).
The leading Florida case on antenuptial agreements is Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17. There, the Supreme Court, speaking through Justice Caldwell, stated that "such agreements [i.e. antenuptial] are in harmony with the public policy and often conducive to marital tranquility." The opinion further held, inter alia, that the wife might be bound by an antenuptial agreement, even if it made an inadequate provision for her, if she signed it freely and voluntarily and with some understanding of her rights and with full information as to the husband's property. Such are the facts in the instant case. The wife is simply saying, "it ain't enough alimony, now, I want more." Before she married him, however, it was adequate; she did not disagree with the alimony provisions then, and ought not to be permitted to set them aside, in good conscience, now. See Miller v. Miller, 149 Fla. 722, 7 So.2d 9 (1942); Rice v. Rice, *421 148 Fla. 620, 4 So.2d 850 (1941); Gallemore v. Gallemore, 94 Fla. 516, 114 So. 371 (1927).
The argument is advanced, however, that the rule upholding the validity of an antenuptial agreement pronounced in Del Vecchio, supra, and other cases, applies only to "property" rights and not to "alimony" provisions of an antenuptial agreement. This argument fails to consider that it has been held that after marriage, a wife may enter into alimony and property settlements with her husband, and that such "agreements made in good faith, free from fraud, deceit or trickery relating to alimony between husband and wife, or the adjustment of their property rights, though made in contemplation of divorce, can or may be sustained or upheld by the courts." Miller v. Miller, supra, and cases cited therein.
I see no reason why public policy should protect the unmarried woman more than the married woman and hold that alimony provisions in antenuptial agreements are invalid whereas such alimony provisions if made in a post-nuptial agreement are valid.
This court has held that antenuptial agreements, per se, are not void in this state, but merely voidable. See Cantor v. Palmer, Fla.App. 1964, 166 So.2d 466, and cases cited therein.
In Lindsay v. Lindsay, Fla.App. 1964, 163 So.2d 336, we found that an antenuptial agreement, which provided for no alimony to the wife, to be unfair under those circumstances, and not in conformity with Del Vecchio, supra. In Lindsay, we stated:
* * * * * *
"* * * By implication, the opinion [Del Vecchio] holds that the parties may contractually determine alimony provisions in the event of separation or divorce, but the case does not decide the question of the validity of an ante-nuptial agreement wherein the future wife waives her right to alimony * * * and receives nothing in return." (Emphasis added)
* * * * * *
In Sack v. Sack, Fla.App. 1966, 184 So.2d 434, we held that an antenuptial agreement must be fair between the parties, in conformity with Del Vecchio, supra, and that:
* * * * * *
"* * * If * * * the chancellor grants * * * a decree of divorce, then the question of validity of the [antenuptial] contract will be material, as it affects alimony, and should be measured * * * under the rule * * * of Del Vecchio * * *" (Id. at 184 So.2d 435, brackets and emphasis ours).
* * * * * *
This case does not involve an agreement under which the wife waived all alimony or support as she was to receive Six Hundred Dollars a month as permanent alimony, under the agreement, and a lump sum of $21,600 in the event of his death. No showing has been made that this was not a fair and reasonable provision for her at the time of the execution of this agreement or that she was prejudiced by any lack of information concerning her voluntarily agreeing to it.
Dawkins v. Dawkins, Fla.App. 1965, 172 So.2d 633, relied upon, in part, by the majority, was discussed in my dissent in Gelfo v. Gelfo, Fla.App. 1967, 198 So.2d 353. The opinion in Dawkins, supra, does not say whether it involved a post-nuptial or antenuptial agreement. It simply sustained, without discussion, a finding by the court below that the alimony provisions of the agreement were "unfair and over reaching." There was, I am sure, sufficient competent evidence in that case to sustain the finding of "unfair and overreaching" by the trial judge. No such finding is made here and the appellant does not so contend.
The whole thrust of appellant's argument is that alimony provisions in antenuptial agreements are void as against public policy. The public policy of Florida *422 concerning married women, and their contractual rights, is set forth in Fla. Stat. § 708.08, F.S.A. Public policy permits a married woman to execute a valid contract concerning her rights to alimony or to waive the same in the event of a divorce or separation from her husband. Pemelman v. Pemelman, Fla.App. 1966, 186 So.2d 552. Should we discriminate between married and unmarried women over their legal rights to enter into a valid contract concerning alimony? I think not.
A general discussion of "public policy" is contained in 7 Fla.Jur. Contracts, § 62, wherein it is said:
* * * * * *
"* * * [C]ourts should be extremely cautious when called upon to declare a contract void on the ground of public policy. Prejudice to the public interest must clearly appear before the court is justified in declaring a contract void as against public policy. Since it is a matter of great public concern that freedom of contract be not lightly interfered with, it is only in clear cases that contracts will be held void as contrary to public policy. Where a particular contract is not prohibited under constitutional or statutory provision, or prior judicial decision, it should not be struck down on the ground that it is contrary to public policy, unless it is clearly injurious to the public good or contravenes some established interest of society."
Suppose a wealthy woman wants to marry a poor, salaried man, who is paying alimony to a previous wife and who has an invalid mother to support. They want to get married but he is hesitant because of his feeling of duty to maintain his already existing obligations to support his ex-wife and mother. The woman offers to waive any possible future claim to alimony so that the man's feeling of duty and obligation will not be a bar to their marriage. Under the majority opinion, however, this would be invalid and contrary to public policy. This, instead of encouraging marriage, would discourage it and prevent the parties from a proper marital relationship.
The public policy of Florida, as expressed by the legislature, gives a woman a statutory dower interest in her husband's estate. Fla. Stat. § 731.34, F.S.A. Nevertheless, antenuptial agreements in which the wife bargains away her statutory dower rights in her husband's estate have been upheld. See Cantor v. Palmer, supra.
Certainly, the state has an interest in the husband's duty to support his wife, but it also has an interest in the support of a widow as evidenced by its statutory dower provisions. From a material viewpoint, the state should have no more concern for the support of a divorcee than a widow.
In other words, if it is not against public policy for a woman in Florida to enter into a valid antenuptial agreement disposing of her statutory dower rights, I don't see why she should not be able to enter into a valid antenuptial agreement concerning alimony, in the event of a separation or divorce.
Here, a mature adult woman in full possession of her mental and physical faculties, wanting to get married, received a full and complete disclosure as to the assets of her prospective husband; read and understood the proposed antenuptial agreement, which was clear and unambiguous; discussed it with her attorneys, and other parties, found it to be fair and reasonable as to its alimony provisions at the time of its execution, and entered into it freely and voluntarily, without duress, trickery, overreaching, concealment or coercion. I think, under these facts, such an antenuptial agreement concerning alimony provisions should be upheld as a valid contract.
I would affirm.
NOTES
[1] Del. Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17.
[2] The reasons of public policy which force judicial disregard of a provision of an antenuptial contract relating to alimony, are not applicable to an antenuptial contract relating to the property rights of the wife upon and in the event of death of the husband. Del Vecchio v. Del Vecchio, supra, dealt with prerequisites to validity of the latter type contract, but was not concerned with the former.
[3] See footnote 2.
[4] See Reynolds v. Reynolds, supra, 217 Ga. 234, 123 S.E.2d 115, 134; Motley v. Motley, supra, 255 N.C. 190, 120 S.E.2d 422, 424.