257 So.2d 530 (1972)
Sari POSNER, Petitioner,
v.
Victor POSNER, Respondent.
No. 41062.
Supreme Court of Florida.
March 8, 1972.
Rehearing Denied April 12, 1972.
*532 Mallory H. Horton, of Horton, Schwartz & Perse, Miami, and Frank Ragano of Ragano & La Porte, Tampa, for petitioner.
Ray H. Pearson, and James D. Little, of Frates, Floyd, Pearson & Stewart, Miami, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Third District, reported at 245 So.2d 139. In this, the second appearance of the cause here, the question presented is whether the lower courts have followed the mandate of our original decision, reported at 233 So.2d 381 (Fla. 1970).
On the merits, the case involves the validity of an antenuptial agreement executed fourteen days before the marriage of the parties on December 30, 1960. After six years of marriage and two children, the parties were divorced by decree dated December 7, 1966. Under the terms of the antenuptial agreement, Posner, a very wealthy man, pays $600 per month in alimony and $600 per month per child for support.
In its decision reported at 206 So.2d 416 (Fla.App.3rd 1968), the District Court held that the alimony provisions of the antenuptial contract were not binding on the discretion of the Chancellor in awarding alimony. The District Court certified its decision as one passing on a question of great public interest, to-wit:
"Whether a provision of an antenuptial contract, specifying an amount of alimony to be accepted by a prospective wife in the event of separation or divorce is valid, or is void as against public policy."
This Court, in its first opinion, held:[1]
"We have given careful consideration to the question of whether the change in public policy towards divorce requires a change in the rule respecting antenuptial agreements settling alimony and property rights of the parties upon divorce and have concluded that such agreements should no longer be held to be void ab initio as `contrary to public policy.' If *533 such an agreement is valid when tested by the stringent rules prescribed in Del Vecchio v. Del Vecchio, supra, 143 So.2d 17, for ante- and post-nuptial agreements settling the property rights of the spouses in the estate of the other upon death, and if, in addition, it is made to appear that the divorce was prosecuted in good faith, on proper grounds, so that, under the rules applicable to postnuptial alimony and property settlement agreements referred to above, it could not be said to facilitate or promote the procurement of a divorce, then it should be held valid as to conditions existing at the time the agreement was made." (e.s.)
We further noted that the future binding effect of such antenuptial agreement is controlled by Florida Statutes § 61.14, F.S.A., which provides that when "the circumstances of the parties or the financial ability of the husband has changed since the execution of such agreement or the rendition of the order, either party may apply to the circuit court ... for a judgment decreasing or increasing the amount of support, maintenance or alimony... ."[2] (italics supplied)
In conclusion, this Court in the original Posner decision here, held:[3]
"In summary, we hold that the antenuptial agreement, if entered into under the conditions outlined in Del Vecchio v. Del Vecchio, supra, 143 So.2d 17, was a valid and binding agreement between the parties at the time and under the conditions it was made, but subject to be increased or decreased under changed conditions as provided in § 61.14, Florida Statutes, F.S.A.
"Accordingly, the decision under review is quashed with instructions to the District Court of Appeal, Third District, to vacate that portion of the final decree of the trial court relating to alimony and support money and remand same for further proceedings in the trial court not inconsistent with this opinion." (e.s.)
Pursuant to this Court's mandate, the District Court returned the cause to the trial court for "further proceedings not inconsistent" with our opinion.[4]
The trial court, without taking any further evidence, found the provisions of the agreement fair and reasonable and ruled that on any future petition for modification it would consider evidence of change in circumstances since the date of the divorce on December 7, 1966. The wife was restricted by the trial court from offering any evidence relating to change of circumstances that occurred since the execution of the agreement in December of 1960, and prior to the divorce in December of 1966.
On appeal, the District Court affirmed, holding that "it appears that the chancellor did follow our mandate and did not commit error in limiting the application of § 61.14, Fla. Stat., F.S.A., to a change in circumstances subsequent to the final decree of divorce."[5] This decision is presently before us for review on petition for writ of certiorari.
Petitioner alleges that the decision of the District Court sought to be reviewed is in conflict with this Court's 1970 decision in Posner v. Posner.[6] A more fundamental basis for our jurisdiction is the enforcement of this Court's mandate in that decision requiring that further proceedings be had and findings made that the conditions outlined in Del Vecchio have been *534 met.[7] This Court has inherent power to see that its own mandates are properly complied with.[8] By all that appears in the record before us there has never been a determination of the question of full and fair disclosure or knowledge of respondent's actual wealth. The disproportionate provision for the wife makes this finding essential. In Del Vecchio we stated:[9]
"Inadequacy of provision for the wife does not in itself vitiate an antenuptial agreement. If, when she signed the contract freely and voluntarily, she had some understanding of her rights and had been fully informed by the husband as to his property or if, notwithstanding the husband's failure to disclose, she had or reasonably should have had a general and approximate knowledge of the character and extent of his property she will be bound."
In addition, the mandate of this Court required consideration by the trial court of Florida Statutes § 61.14, F.S.A., which provides that a change in circumstances of the party since the date of the agreement can be considered by the Chancellor in modification of support and alimony provided for in an antenuptial agreement.
The order of the trial court entered pursuant to the mandate of our first decision in this cause, is entirely inadequate. That order essentially found that:
"[T]he sum provided for alimony and support was fair and reasonable under the circumstances of the parties at the time of the entry into the Agreement and the marriage, and were fair and reasonable sums at the time of the divorce in 1966."
What is required is more than a statement of legal conclusions, especially where the provision for the wife is clearly disproportionate to the wealth of the prospective husband at the time the agreement is executed. In the instant case, it is apparent on the face of the record and essentially without dispute that the provision made for Mrs. Posner under the terms of the agreement was and is disproportionate to the wealth of Mr. Posner and not in keeping with the standard of living of the parties. Under these circumstances, the husband has the burden of proving that the wife had full knowledge of the extent of his property at the time she executed the agreement. In Del Vecchio, we stated:[10]
"Where, as in this case, the provision made for the wife is, upon the face of the agreement, disproportionate to the means of the husband the burden, under the Weeks rule[11], is cast upon the executor to show that the wife, at the time she executed the agreement, had or reasonably ought to have had full knowledge of the husband's property."
We reiterate that inadequate and disproportionate provision for the wife, even to the extent evidenced in the instant case, will not vitiate an antenuptial agreement. If the prospective wife has full knowledge of her rights, and in the absence *535 of willful or unintentional fraud, or the withholding of material facts, she will be it she would be entitled to a greater share of her husband's wealth.
Freedom to contract includes the right to make a bad bargain. But freedom to contract is not always absolute. The public interest requires that antenuptial agreements be executed under conditions of candor and fairness. As stated in Del Vecchio:[12]
"The relationship between the parties to an antenuptial agreement is one of mutual trust and confidence. Since they do not deal at arm's length they must exercise a high degree of good faith and candor in all matters bearing upon the contract."
This Court has inherent power to enforce its mandates and to give such judgment, sentence, or decree as the court below should have given. The instant case calls out for the exercise of that power since the cause has been in litigation since 1965 and has already been remanded one time under our 1968 decision. In the 1968 decision remanding the cause we sought to afford the trial court an opportunity to consider the Del Vecchio case and determine if the standards laid down in that case for post nuptial agreements have been met by the antenuptial agreement in the instant case. Apparently that intention was not completely clear to the court below and we are now faced with the alternative of remanding again for reconsideration of the validity of the agreement with extensive time consuming litigation, or undertaking to determine the matter here on the record before us. We have chosen the latter alternative in the interest of affording relief to the parties involved in this case who have long suffered the delay of this litigation, and as an aid in the future application of the principles stated in our first Posner decision and in Del Vecchio.
Since the provision for the wife under the agreement is clearly disproportionate to the wealth of the husband, we must determine whether petitioner-wife can be said to have had full knowledge of respondent's wealth at the time she executed the agreement. Our determination on this point is based largely on three documents found in the record.
In December of 1960, shortly before the marriage of the parties, respondent gave petitioner a letter which recites in pertinent part as follows:
"You also are aware that the greatest part of my holdings have been transferred to an Irrevocable Trust which I executed on Dec. 1st 1960. Before the execution of this Trust, which was created for the benefit of Steven and Gail and other children, who may be born later, as well as other members of my family, my net worth was approximately $10,000,000. Deducting from this amount shares of stock and other equities which I have already transferred, or which I am planning to transfer to the Irrevocable Trust, my remaining equity or net worth at the present time is approximately $1,600,000."
The "Irrevocable Trust" referred to in the letter was executed December 1, 1960, naming three trustees: Respondent, his father, Morris Posner, and Henry G. Burke, respondent's lawyer and accountant. In the trust the respondent reserves the income for life and the power to reallocate the corpus of the trust at death among various beneficiaries. The trustees have the power to conduct the business and investments and to allocate payments received and disbursements to either principal or income. Most important, however, is the fifth provision of the trust, which is as follows:
"FIFTH: During the lifetime of the Settlor, all of the net income arising *536 from this trust shall be distributed, at least annually, unto the Settlor. During the lifetime of the Settlor, the Trustees acting hereunder, other than the Settlor, may in their sole and absolute discretion, distribute unto the Settlor, or for his benefit, so much of the principal of this trust, which they deem necessary to maintain him in the station of life to which he is now accustomed, or for emergencies arising in his life. Settlor shall have no vote as Trustee in connection with this discretionary power of the Trustees, but he may sign all checks, documents or other instruments necessary to transfer such principal to him or for his benefit." (e.s.)
The antenuptial agreement executed December 16, 1960, contains the following disclosure regarding the "Irrevocable Trust":
"WHEREAS, prior to the execution of this Agreement, the said Victor Posner has informed the said Sari Frazier that he has conveyed, transferred and disposed of the greater portion of his property by conveyance to an Irrevocable Trust created by him for the benefit of his children (now living or who may hereafter be born), and other members of his family, and has reserved to himself for life the income of said Trust. He has also informed the said Sari Frazier that he, Victor Posner, is one of the Trustees of the said Trust and that he has further reserved to himself the right to re-allocate portions to be received by his children and other members of his family out of income and principal of the said Trust, either during his lifetime or subsequent to his death, and further, that he has retained the right to transfer additional property to said Trust and that he intends from time to time to add to the said trust such property either now owned by him and not conveyed to the said Trust or such future acquisitions which he may deem advisable to transfer from time to time, ... ."
Neither the letter of disclosure nor the antenuptial agreement make mention of respondent's right to receive distribution from the trust corpus and there is no evidence that petitioner was otherwise informed or had knowledge that respondent had access to the trust corpus to maintain his standard of living. The disclosed net value of the trust corpus was $8,400,000 in 1960 and is in addition to the life income from the trust and the $1,600,000 remaining assets held by respondent outside the trust.
In addition to his failure to disclose access to the corpus of the trust, respondent also did not disclose the amount of income received from the trust and that this amount was in addition to the $1,600,000 in property held by respondent outside the trust.
The documentary evidence in the record before us establishes a failure to disclose which verges on concealment. The continued reference to the trust as "Irrevocable" would lead one to believe that the trust corpus had been placed beyond the reach of the Settlor. The contrary is apparent from reading the trust document. The failure to disclose in the instant case was substantial and involved many millions of dollars.
Not only was the amount of respondent's wealth greatly understated in the letter and antenuptial agreement, but respondent testified on direct examination that, in conversation with his wife before execution of the agreement, he further depreciated the amount indicated in the letter and agreement as being "very very high and very excessive," and told her "she shouldn't even be guided by that because I did not have that kind of money."[13]
*537 The failure to disclose or show knowledge on the part of petitioner-wife of respondent's wealth plus the inadequate provision made for petitioner renders the antenuptial agreement void. The cause must be remanded for determination of a reasonable permanent alimony for petitioner, support for the children of the parties, and property rights, equitable or otherwise, if any.
The trial court is directed on remand to determine the actual gross worth of respondent at the present time. The actual gross worth encompasses all assets of any kind owned by respondent or subject to his control and all income which he receives or is entitled to receive. The trial court is also directed to determine the standard of living of the parties in terms of dollars spent by respondent or on his behalf by Security Management, Inc., or any other corporation or trust for food, lodging, clothes, entertainment and other living expenses. There is conflicting evidence in the record bearing on the standard of living of the parties. Additional testimony bearing on respondent's wealth and standard of living may be taken by the trial court to determine reasonable alimony and support. Respondent is required to produce books and records needed for this purpose and to pay fees for accounting services rendered in this regard. The trial court may also consider respondent's present standard of living as bearing on the amount of permanent alimony to be awarded.
In view of the years this cause has been in litigation during which petitioner has been subject to the provisions of an invalid agreement, receiving far less than would be required to maintain the standard of living during the marriage, this Court awards as alimony pendente lite the sum of $2,000.00 per month, which appears to be reasonable on the record here presented,[14] nunc pro tunc as of December 7, 1966, the date of the divorce decree, less credit for the $600.00 per month which respondent has been paying and leaving a balance due of $89,600.00 for which amount the trial court is mandated to enter judgment. We are not unmindful that Mr. Posner will receive a federal income tax credit on the alimony paid. Mrs. Posner will be required to pay federal income taxes out of her award.
In this cause, the parties had been married for a substantial period of time and she had borne him two children. The record before us shows her to have been a dutiful and faithful wife and, therefore, this case is not to be confused with a situation oft-times appearing where there is a short courtship, short marriage and an effort to obtain a lifetime of independence from a shipwrecked marriage. Furthermore, it is not often that such substantial wealth or such a high standard of living during the marriage is involved.
Accordingly, the decision sought to be reviewed is quashed and the cause remanded with directions to remand to the trial court for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C.J., and ADKINS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] Posner v. Posner, 233 So.2d 381, 385 (Fla. 1970).
[2] Ibid.
[3] Id. at 386.
[4] 234 So.2d 378 (Fla.App.3rd 1970).
[5] 245 So.2d 139, 140 (Fla.App.3rd 1971).
[6] 233 So.2d 381 (Fla. 1970).
[7] Beverly Beach Properties v. Nelson, 68 So.2d 604, 607 (Fla. 1953): "This is the same suit and we have not lost jurisdiction thereof. Consequently, we have the power to correct any error which the Chancellor or we may have heretofore made in the progress of this litigation. There is no question of res adjudicata because this is the same, not a new and different, suit."
[8] South Dade Farms, Inc. v. Peters, 107 So.2d 30, 32 (Fla. 1958): "In view of the inherent authority of the court to see to it that its own mandates are properly complied with we have consistently taken jurisdiction of matters of this nature even though in particular cases the order of the trial court under assault would not otherwise fall within the constitutional jurisdiction of this court."
[9] 143 So.2d 17, 20 (Fla. 1962).
[10] 143 So.2d 17, 20 (Fla. 1962).
[11] Weeks v. Weeks, 143 Fla. 686, 197 So. 393 (1940).
[12] 143 So.2d 17, 21 (Fla. 1962).
[13] "I specifically told her at that time, too, that the amount that we put in was an amount which was very very high and very excessive, that it probably was way out of line with what I had but we wanted by no chance to underestimate what we had, being real estate it was hard to put down exactly what the property was or what it was worth and that thereby we took a number that was completely out of line, she shouldn't even be guided by that because I did not have that kind of money." Transcript of Testimony, Vol. V, p. 465.
[14] On March 14, 1966, the trial court, after a hearing, awarded support money pendente lite of $550 per week or $28,600 per year, but did not specify whether it was for the wife and two children or the wife only.