318 So.2d 438 (1975)
Paris G. SINGER, Appellant,
v.
Jane E. SINGER, Appellee (Two Cases).
Nos. 73-671, 73-1254.
District Court of Appeal of Florida, Fourth District.
July 18, 1975.
Rehearing Denied August 19, 1975.
*439 Harry G. Carratt of Morgan, Carratt & O'Conner, P.A., Ft. Lauderdale, for appellant.
Ray H. Pearson and Sherryll M. Dunaj of Frates, Floyd, Pearson, Stewart, Proenza & Richman, P.A., Miami, for appellee.
OWEN, Judge.
The issues on this appeal from a final judgment of dissolution of marriage, only two of which merit discussion, center on the proper construction and effect to be given the parties' antenuptial agreement executed by them on the eve of their marriage eight years prior to the filing of this suit.
In the final judgment the court made the following specific finding:
"The prenuptial contract entered into between the parties is a valid and binding agreement. The Court, at the conclusion of the Petitioner's case, entered a partial directed verdict on the issue of said prenuptial contract, finding that the Agreement met the terms and provisions of Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17, and numerous decisions of our Appellate and Supreme Courts in the Posner v. Posner cases."
No issue is raised on this appeal as to the validity of the agreement.
As to alimony, the relevant portions of the antenuptial agreement provided that in the event of a divorce prosecuted by either party the husband would pay to the wife as alimony the sum of $500.00 per month, except that "in the event that Jane, as plaintiff, should successfully prosecute a cause for divorce from Paris on the grounds of adultery, then Paris agrees to pay to Jane and Jane agrees to accept from Paris the *440 sum of $1,200.00 per month as permanent alimony".
Appellant husband initiated the dissolution proceedings alleging the wife's adultery. The wife's second amended counterclaim upon which the case went to trial did allege, among other things, the husband's adultery, but this allegation was ordered stricken by the court prior to trial and was never reinstated. Although there was evidence tending to show that the husband was guilty of adultery, the record is clear that within the contemplation of the language of the agreement, the appellee-wife did not "successfully prosecute a cause for divorce from Paris on the grounds of adultery".
Notwithstanding the clear provisions of the agreement and the court's finding that the same was valid and binding, the court made the following finding relative to alimony:
"The Court finds that the sum of Twelve Hundred Dollars ($1,200.00) monthly alimony as provided in a portion of the Agreement, the terms of which were stipulated to by the Petitioner/Husband, is a reasonable and proper sum of alimony under the circumstances of the parties at this time."
And, in ordering the husband to pay that sum, further stated in the final judgment:
"The Court recognizing and acknowledging that it is not bound by the terms and provisions in the Agreement as to alimony, has reviewed the entire circumstances of needs, ability to pay and the standard of living of the parties, and finds at this time the payment of Twelve Hundred Dollars ($1,200.00) a month by Petitioner to Respondent as permanent, periodic alimony is a reasonable, just and proper sum."
As his first point on appeal, the husband contends that the court erred in awarding $1,200.00 a month alimony.
Since the court did not find, nor would the record sustain the conclusion, that appellee-wife had "successfully prosecuted a cause for divorce ... on the grounds of adultery", the court's award to the appellee of $1,200.00 a month permanent alimony, in the face of the clear and unambiguous contractual provision for $500.00 per month alimony, is susceptible of only two reasonable explanations.
One such explanation (and, the more likely one, judging by the language of the final judgment) is that the trial court simply believed it was in no way bound by the alimony provisions of the agreement, but to the contrary was free to exercise its discretion to determine alimony under Fla. Stat. § 61.08 (1971). While there is a respectable body of case law standing as precedent for that principle, we think those cases must now be either clearly distinguished from, or considered as overruled by, the Posner cases, infra. For that reason we discuss these several cases hoping to thereby clarify an area in which we perceive some confusion presently exists.
The case of Dawkins v. Dawkins, 172 So.2d 633 (2nd DCA Fla. 1965) involved a postnuptial agreement. Therein, the wife had expressly waived alimony. The trial court refused to accept that part of the agreement which waived alimony because the court found that under the circumstances of the case that part of the agreement was "unfair and overreaching". The appellate court affirmed and announced the principle that the chancellor was vested with the sole discretion to settle questions relative to alimony and the parties could not by contract divest him of such discretion.
The case of Gelfo v. Gelfo, 198 So.2d 353 (3rd DCA Fla. 1967) also involved a postnuptial agreement which the trial court found to be unconscionable so far as it required the wife to waive alimony. Citing as authority the Dawkins case, supra, the appellate court affirmed although it acknowledged *441 the apparent conflict with such cases as Miller v. Miller, 149 Fla. 722, 7 So.2d 9 (1942); Bare v. Bare, 120 So.2d 186 (3rd DCA Fla. 1960); D'Amato v. D'Amato, 176 So.2d 907 (3rd DCA Fla. 1965); and Pemelman v. Pemelman, 186 So.2d 552 (2nd DCA Fla. 1966).
In Posner v. Posner, 206 So.2d 416 (3rd DCA Fla. 1968), the trial court had upheld the validity of an antenuptial agreement and had awarded the wife alimony in accordance with its terms. The appellate court, citing both Dawkins and Gelfo, held that the alimony provision of the antenuptial agreement was not binding on the chancellor in determining the award of alimony, and remanded for an award of alimony based upon an exercise of the chancellor's sound judicial discretion. The Supreme Court granted certiorari, Posner v. Posner, 233 So.2d 381 (Fla. 1970), and quashed the decision of the District Court of Appeal, holding that the antenuptial agreement, if entered into under the stringent rules prescribed in Del Vecchio v. Del Vecchio, supra, was a valid and binding agreement between the parties at the time and under the conditions it was made, subject to modification upon a showing of changed circumstances and conditions as provided in Fla. Stat. § 61.14. Subsequently, the Posner case was again before the Supreme Court on a petition for writ of certiorari, Posner v. Posner, 257 So.2d 530 (Fla. 1972). The Supreme Court reiterated the binding effect of the antenuptial agreement when entered into under the conditions outlined in the Del Vecchio case and confirmed that any modification thereof would be based upon a showing of change of circumstances occurring between the time of the execution of the agreement and the time of the hearing.
While the Posner case involved an antenuptial agreement, the Supreme Court significantly did not draw any distinction between antenuptial and postnuptial agreements and, in fact, affirmatively indicated an intent to treat alike the two types of contracts. Despite this indication from the Supreme Court that alimony provisions in postnuptial agreements should be treated no differently than antenuptial agreements, and its holding that alimony provisions in antenuptial agreements are binding subject only to modification due to changed circumstances, the post-Posner cases involving alimony provisions in postnuptial agreements continued to follow the pre-Posner principle, i.e., that a court is not bound at all by such provisions. See, Van Boven v. First National Bank in Palm Beach, 240 So.2d 329 (4th DCA Fla. 1970); Spencer v. Spencer, 242 So.2d 786 (4th DCA Fla. 1970), cert. denied 248 So.2d 169 (Fla. 1971); Risteen v. Risteen, 280 So.2d 488 (3rd DCA Fla. 1973), cert. denied 283 So.2d 563 (Fla. 1973); Harris v. Harris, 291 So.2d 95 (1st DCA Fla. 1974). The cited cases are clearly in direct conflict with the Supreme Court decision in Posner v. Posner, 233 So.2d 381 (Fla. 1970), unless it can be said that they are distinguishable because they involved postnuptial agreements whereas the Posner case involved an antenuptial agreement. In Bailey v. Bailey, 300 So.2d 294 (4th DCA Fla. 1974), we took the view that this was not a valid distinction. While we think our view in the Bailey case was correct, it does not enter into our decision in the instant case since we are here dealing with an antenuptial agreement squarely within the Posner principle. Thus, we conclude that the trial court, having found the agreement to be valid and binding under the Del Vecchio guidelines, was bound by the alimony provisions thereof, subject to modification only upon a showing under Fla. Stat. § 61.14 (1973), of a change of circumstances subsequent to the execution of the agreement.
The only other reasonable explanation for the trial court's award of alimony in excess of the alimony provision of the agreement is that the trial court concluded that there had been a showing of a substantial change of circumstances since the execution of the agreement so as to justify *442 modification. However, the court did not make any finding of a change of circumstances and the record does not disclose evidence of any change of circumstances that could not be said to have been reasonably contemplated by the parties at the time of entering into the agreement. Substantially all of appellant's income was from various trusts or assets disclosed by the antenuptial agreement. While it is true that appellant's income fluctuated widely over the several years of the marriage, as a result of which he was able to provide appellee with a far more affluent lifestyle than was the case at the time of the marriage, his fortunes had declined to the point where, at the time of trial, his financial circumstances were not substantially different from that which they had been at the time of the execution of the agreement. But, as we have already noted, the vicissitudes of his fortune in the interval were only that which can be said to have been reasonably contemplated from the nature of his assets, all fully disclosed before the agreement was executed. We conclude that there were no changed circumstances which would provide a basis for modifying the agreement.
Concluding, as we do, that the court was bound by the alimony provisions of the agreement absent a sufficient showing of a substantial change of circumstances to justify modification, the permanent alimony award of $1,200.00 per month was error and such permanent alimony award is modified to the sum of $500.00 per month in accordance with the terms of the agreement.
In accordance with the terms of the aforesaid agreement, the final judgment ordered appellant to transfer to appellee the title to a certain Rolls Royce automobile which was in appellee's possession. The agreement, however, required only transfer of title and made no reference to any obligation on the part of appellant to discharge any liens which might exist against the automobile. That portion of the final judgment requiring appellant to discharge any existing lien against the automobile placed an obligation on the husband in excess of that provided by the agreement, and was therefore in error.
Appellant's remaining points, concerning disposition of the proceeds of the sale of the parties' former home, appellant's obligation to appellee for money seized from her account by the Internal Revenue Service, and the attack on the amount of attorneys' fees and costs, are found to be without merit. As to the award of permanent alimony and the lien against the automobile, the final judgment is modified to conform to the views herein set forth, and as thus modified, the final judgment is affirmed.
Affirmed, as modified.
WALDEN, C.J., and MAGER, J., concur.